## BASTIN v. MYERS ET AL.

[No. 11,816. Filed June 10, 1924. Rehearing denied October 16, 1924. Transfer denied December 19, 1924.]

1. QUIETING TITLE.—*Purpose of act of 1915.*—The purpose of the act of 1915 (Acts 1915 p. 649, §1116b Burns' Supp. 1921) was to provide a method by which the unknown "husband or wife, widower or widow, heirs or devisees, of any and all persons appearing of record as a former owner or encumbrancer" might be made a party defendant and be bound by a decree quieting the plaintiff's title as to such husband, wife, widower, widow, heir or devisee whose name was unknown to the plaintiff. p. 337.

2. QUIETING TITLE.—*Persons bound by decree under act of 1915.*—A decree rendered in a proceeding under the act of 1915 (Acts 1915 p. 649, §1116b Burns' Supp. 1921), quieting title to certain land was not binding on one who was not a party to the action and who was not the husband, wife, widower, widow, heir or devisee of any person shown by the records of the county to have had an interest in said land, although the action was prosecuted to quiet title "against the world." p. 337.

3. QUIETING TITLE.—*Application of act of 1915.*—The act of 1915 relative to suits to quiet title, etc., (Acts 1915 p. 649, §1116b Burns' Supp. 1921) is applicable only when there is (1) a break or hiatus in the record title of the real estate, or

(2) a defect, or an apparent defect, in, or cloud upon, the title of the real estate on account of a defective or inaccurate description appearing in some matter of record, or (3) where it does not appear of record that a grantor or mortgagor was unmarried at the time of executing some deed or mortgage, or (4) where it appears from the records that a deed, will or mortgage or other instrument affecting the real estate was not properly executed, or (5) that a mortgage or lien affecting the real estate has not been duly released, as disclosed by the public records of the county, "by reason whereof some doubt may be alleged or arise as to the complete validity of the title claimed or asserted" by the party prosecuting the action. p. 337.

4. QUIETING TITLE.—*Complaint under act of 1915, when insufficient.*—A complaint to quiet title under the act of 1915 (Acts 1915 p. 649, §1116b Burns' Supp. 1921) which does not allege the existence of any break, hiatus or other defect in the title enumerated in section one of the act is insufficient. p. 338.

5. PROCESS.—*Statutory provisions for acquiring jurisdiction of nonresident defendants must be strictly pursued.*—Statutory provisions for acquiring jurisdiction of a defendant by publication or by personal service of process out of the state must be strictly pursued. p. 338.

6. QUIETING TITLE.—*Decree binding only on parties to action.*— A decree quieting title in an action by the holder of a tax deed under the provisions of §297 of the 1919 Tax Law (Acts 1919 p. 357, §297, §10139l11 Burns' Supp. 1921, the same being a re-enactment of §10393 Burns 1914) did not prevent the enforcement of a claim to the same land by one who was not a party to the suit and who had acquired title by adverse possession, especially where a record in the auditor's office gave notice that he might have some claim to the land, and the action was prosecuted under the act of 1915 relative to suits to quiet title (Acts 1915 p. 649, §1116b Burns' Supp. 1921), as that required that he be made a party thereto. p. 339.

7. ADVERSE POSSESSION.—*Possession by tenant of adverse possessor is notice to purchasers.*—Possession by a tenant of land of which one other than the record owner has acquired title by adverse possession is notice of the actual ownership to a prospective purchaser thereof. p. 339.

8. ADVERSE POSSESSION.—*Possession continued without interruption for twenty years gives title.*—Adverse possession of real estate continuously for a period of twenty years gives title thereto. p. 339.

9. TAXATION.—*Auditor's failure to attach copy of notice of sale and certificate of posting and publication required by law renders tax sale invalid.*—The failure of the county auditor

to insert in his records, at the foot of the list of lands and lots that are delinquent for taxes, a copy of the notice of the sale, and a certificate showing the manner in which said notice was posted, including the places where the same was posted, and showing for what length of time it was printed and posted, renders a tax deed for any of such lands ineffectual to convey title.   p. 341.

10.   TAXATION.—*Quieting title by holder of tax deed, effect of.*— The purpose of §222 of the tax law of 1891 (Acts 1891 p. 199, §10393 Burns 1914), relative to quieting title by the holder of a tax deed, was to cut off all claims of a party whose title or claim was founded upon some instrument which had not been recorded, and it did not have the effect of cutting off the right of a party in actual possession of the real estate (*Bliss v. Gallagher* [1915], 60 Ind. App. 454, distinguished).   p. 341.

11.   NOTICE.—*Possession of real estate is equivalent to notice by record.*—Possession of real estate is notice of whatever title or claim the person in possession has in the real estate; it is equivalent to constructive notice by record and is just as effective as notice imparted by record.   p. 341.

12.   JUDGMENTS.—*A judgment is conclusive only against parties and their privies and, as to strangers, it is evidence only of its entry.*—A judgment is conclusive and binding only against the parties thereto and their privies; as to strangers, it is evidence only of its entry, and not of any facts on which it was based.   p. 343.

13.   QUIETING TITLE.—*Parties bound by decree under act of 1915.* —In a suit to quiet title under the act of 1915 (Acts 1915 p. 649, §1116b Burns' Supp. 1921), a decree quieting plaintiff's title is limited in its effect to the rights and claims of the defendants thereto where the action was not based on any of the defects of title enumerated in the statute, although the action was prosecuted to quiet title "against the world," as authorized by that statute.   p. 344.

From Monroe Circuit Court; *Hubert A. Rundell,* Judge.

Action by Thomas H. Bastin against Elda Myers and others.   From a judgment for defendants, the plaintiff appeals.   *Reversed.*

*John F. Regester* and *George W. Henley,* for appellant.

*J. B. Wilson, Miller & Blair* and *Miers & Corr,* for appellees.

McMAHAN, J.—This is an action by appellant against Elda Myers, James S. Bastin, Charles Blakely and John B. Smallwood, to quiet title to the east half of the northwest quarter of section 18, township 10 north, range 1 west, in Monroe county.

The complaint is in two paragraphs, the first being in the usual form of a complaint to quiet title. The second paragraph, in addition to the facts alleged in the first, alleged that the claim of said parties other than Smallwood was based on a tax deed issued by the auditor of said county in 1919 to said Charles Blakely, who conveyed the same to James S. Bastin and who, in turn, conveyed the same to Elda Myers; that the tax deed through which said parties derived their title is invalid in so far as its attempts to convey title, by reason of certain alleged defects in the tax sale, and asked the court to ascertain the amount due the defendants by reason of said sale and for taxes paid thereafter and for leave to redeem from such sale.

A default was entered as to defendant Smallwood. The other defendants answered in three paragraphs, the first being in denial. The second paragraph alleged the land was duly sold at a tax sale held by the proper officers in February, 1917, to Alice Z. Lowe who assigned her certificate of sale to Charles Blakely; that, no redemption from such tax sale being made, the auditor executed a deed to said Blakely, who thereafter commenced an action in the circuit court of said county to quiet his title to said lands; that he made defendants all persons whom he knew had or claimed to have any interest in or lien upon said real estate; or who appeared of record in any of the public offices of said county to have any interest in or lien upon said land; that appellant did not appear to have any interest in or lien upon said real estate as shown by the record in any public office of said county; that such proceedings

were had therein as resulted in a decree being rendered
in January, 1920, quieting Blakely's title to said land
as against all claims of the defendants in that action:
that Blakely thereafter conveyed the land in question to
James S. Bastin who paid Blakely full value therefor
and who subsequently conveyed said land to appellee
Myers.

The third paragraph of answer, in addition to the
facts stated in the second paragraph of answer, alleged
that Blakely in his complaint to quiet title asserted title
to said real estate against any and all persons, that his
purpose in such action was to quiet his title as "against
the world," that he named therein as defendants all per-
sons within his knowledge through whom any hostile
claim might be asserted, and that he filed with his com-
plaint an affidavit stating the names of all persons dis-
closed by the public records of the county by and
through whom some claim, title or interest in said land
might possibly be asserted, that he did not know
whether such persons were living or dead, that he did
not know their residence, whether they were married
or single, the names of their husbands or wives, heirs
or legatees.   It is also alleged that an affidavit for pub-
lication was filed; that the clerk of said court caused
notice to be published naming January 3, 1920, as re-
turn day; that such proceedings were had therein as
resulted in a decree quieting Blakely's title; that Blakely
conveyed the land by warranty deed to appellee Bastin
for a valuable consideration, and that the latter sub-
sequently conveyed the same to appellee Myers; that
appellant's claim ante-dated said decree and that the
matters in issue in this action were fully adjudicated
against appellant in said action.

Demurrers to the second and third paragraphs of an-
swer being overruled, a reply in two paragraphs was
filed, the first being a denial.   The second paragraph

alleged ownership of the real estate in question by rea-
son of adverse possession and that appellant had never
parted with his title and was not made a party to any
action to quiet title.   A demurrer was sustained to the
second paragraph of reply, after which. there was a
trial by the court and a decree that appellant take noth-
ing.   A motion for a new trial being overruled, this
appeal follows.   The errors assigned relate to the ac-
tion of the court in overruling the demurrer to second
and third paragraphs of answer, in sustaining the de-
murrer to the second paragraph of reply and in over-
ruling the motion for a new trial.

The evidence, without conflict, shows that in 1889
Joshua Chandler executed a mortgage on the south forty
acres in controversy to the auditor of said county to
secure the payment of a school fund loan; that said
indebtedness not being paid when due, the real estate
described in the mortgage was declared forfeited by the
county auditor, who thereafter gave notice as required
by law that he would sell the mortgaged land for the
purpose of paying the amount due on the school fund
loan and mortgage; that the land failing to sell for
want of bidders was bid in by the county auditor, as
required by the statute then in force, §4393 R. S. 1881;
that thereafter, the auditor caused the land so bid in to
be appraised by two disinterested freeholders and there-
after, and after having given notice as required by law,
the auditor sold said south forty to appellant, who, hav-
ing paid one-third of the purchase price, was given a
certificate by the county auditor reciting said facts and
stating that said purchaser, on payment of the balance
of the purchase price, would be entitled to a deed for
said land.   This certificate was entered of record in
the commissioners' record of said county.

The register of School Fund Loans kept in the audi-
tor's office contained a record of this loan, showing

date and amount of the loan, to whom made, when due, description of the land mortgaged, and that the same had been forfeited and sold to appellant March 26, 1894. The register contained a record of the certificate of sale to appellant, with a statement of the amount due, and showing payment in full by him of the balance due on account of such purchase.

Appellant testified that he bought the forty acres mentioned in said school fund mortgage from the auditor March 26, 1894, that he thereafter paid the balance due, that he had lost the certificate issued to him by the auditor and never received a deed for said land; that he went into possession of said land immediately after receiving said certificate and thereafter resided on said land from March, 1894, to November, 1918, when he rented the land to his brother James S. Bastin, appellee herein, who farmed it and other land in controversy in 1919; that during all the time he resided on said land, he claimed to own it; that he cleared it of brush, ditched it and farmed it. He also testified that about the time he purchased said forty acres from the auditor, he purchased the balance of the land in controversy from Martha J. Chandler and took a quit-claim deed from her, that he immediately thereafter took possession of that land and cleared it and claimed to own it as his own and resided on it from 1894 to November, 1918; that the deed to him for it, however, was lost and never recorded. He also testified that he owned and had sufficient personal property out of which the taxes for which the land was sold could have been collected. In 1919, a party by the name of Antibus asked appellant about renting the house on the farm. Appellant told him it would be all right with him, but for him to see appellant's brother, Thomas Bastin, and that later Antibus moved into the house and lived there a couple of months.

It is shown by the uncontradicted evidence that the land was farmed in 1919 by appellee James S. Bastin. Ralph Myers, father of appellee Myers, ·testified that his farm adjoined the land in question, that appellant lived on the land in question and farmed it from 1894 to and including 1918, he never knew of any other person exercising any acts of ownership to or over the land and that appellee Bastin, from whom his son Elda Myers purchased the land, farmed it in 1919.

Horace Blakely, as auditor of Monroe county, executed and delivered to Charles Blakely a tax deed for the land in question October 2, 1919. This deed recites that the land was sold to Alice Z. Lowe February 12, 1917, for taxes for the years 1915 and 1916, returned delinquent in the name of J. B. Smallwood, that a certificate of such sale was issued by the auditor to the purchaser, Alice Z. Lowe, who, September 30, 1919, assigned such certificate to Charles Blakely. On November 15, 1919, Charles Blakely, by warranty deed, conveyed the whole of the land in controversy to appellee James S. Bastin, brother of appellant, who, on May 21, 1920, his wife joining, by warranty deed, conveyed the same land to appellee Elda Myers. The record of tax sales kept in the auditor's office shows that on February 12, 1917, the land in question was sold to Simp Lowe instead of to Alice Lowe, for $81.83, and that the deed was made to Charles Blakely October 3, 1919.

The auditor, Horace Blakely, testified he did not know whether notice of the tax sale for the year 1917 was posted in the several townships in the county or not; that he delivered such notices to the sheriff to be posted; that he thought he could find the affidavit of the sheriff showing the posting in each township; that notice was posted on a bulletin board near the door of the courthouse, that no copy of this notice was inserted at the

foot of the list of delinquent lands and lots on the record in the auditor's office.

Charles Blakely filed his complaint in the Monroe Circuit Court to quiet his title to the lands in controversy together with other land. The only defendant named in the title of the complaint as the same appears in the evidence was Thomas Langwell, whose name was followed by "et al." The complaint alleged that the plaintiff therein complained of the "defendants" without naming them; that the plaintiff was the owner in fee of the real estate therein described; that the defendants without right, claimed an interest in the real estate adverse to plaintiff's right; that the plaintiff asserted title to the real estate described "against any and all persons whomsoever and that his purpose in this proceeding is to quiet title to said lands as against the world," and that he has named as defendants all persons within his knowledge through whom any hostile claims might be asserted.

The record fails to show when this complaint was filed, but, in connection therewith, appellee introduced in evidence an affidavit of Blakely's attorney therein, sworn to as of November 12, 1919. This affidavit states that a cause of action existed against certain defendants, naming them, and the "unknown heirs, devisees, legatees, husbands, wives, widows, widowers, executors, administrators, trustees, personal representatives, guardians, successors, assigns, grantees, receivers, and lessees, respectively of each and all of the foregoing named and designated parties defendants. That the names of all persons disclosed by the public records of said Monroe county by, under and through whom some claim or title or interest in said land might possibly be asserted have been set forth in the complaint"; that plaintiff did not know whether the defendants thereto-

fore named in the affidavit were living or dead or their legal residence, the name or whereabouts of the wife or widow of certain named defendants; that if any of the "above named and designated defendants be dead leaving heirs, devisees, legatees, executors, administrators," the plaintiff did not know their names or legal residence, that plaintiff claimed full and complete title to the real estate described in the complaint as against all persons and that it was his purpose to quiet title against the world.

Another affidavit signed by the attorney for the plaintiff was also filed November 12, 1919. This affidavit stated that a cause of action existed against certain of the defendants named in the first affidavit, and "the unknown heirs, devisees, legatees, husbands, wives, widowers, widows, executors, administrators, trustees, personal representatives, grantees, receivers, and lessees, etc.," of the *named defendants*; that the action was to quiet title to real estate and that the residence of none of said "defendants is known to this affiant and that all are, as he is informed and believes, non-residents" of the State.

November 13, 1919, the clerk issued a notice of nonresidency, reciting that the defendants named in the affidavit of nonresidency, and "the unknown heirs, devisees, legatees, husbands, wives, widows, widowers, executors, administrators, trustees, personal representatives, guardians, successors, assigns, grantees, receivers, and lessees respectively of each of the foregoing named and designated defendants" were nonresidents, that they were necessary parties, that the cause of action was being prosecuted to quiet plaintiff's title to the real estate described in the complaint against the claims and demands of "all the defendants as named and designated in said complaint and as against the world," and describing the land. Such further proceedings

were had therein as resulted in a decree being rendered in favor of Charles Blakely, plaintiff therein and appellee here, quieting his title as to the defendants in that action. The record in the instant case also fails to show when the decree in favor of Blakely quieting his title was rendered.

Appellees insist that the decree quieting Blakely's title to the real estate in question is binding on appellant, even though he was not a party to that action. Section 1116b Burns' Supp. 1921, Acts 1915 p. 649, provides that in certain actions in relation to real estate, including actions to quiet title, where there is a break in the record title of the real estate or where the title is defective on account of defective or inaccurate descriptions in any matter of record affecting such title, or where it does not appear of record that a grantor or mortgagor was unmarried when executing a deed or mortgage pertaining to such real estate, or where it appears from the record that any deed, will, mortgage, or other instruments affecting such real estate was not properly executed, or that a mortgage or lien had not been properly released as disclosed by the records of the county, by reason whereof some doubt may be alleged or arise as to the validity of the title claimed or asserted, the party prosecuting such action, when not having knowledge as to whether the person or persons who by any possibility might claim some title or interest in the land are living or dead and when he does not have knowledge as to the full names of persons who might claim some title or interest in the land, "whether as husband or wife, widower or widow, heir or devisee, by reason of their relation to some former owner, mortgagee or encumbrancer thereof as disclosed by the public record of said county or elsewhere, or as to whether such parties are living or dead, may make defendants to such proceedings any and all persons who

might have some possible interest in such lands, *and whose name or names appear of record in any record affecting said real estate and may also make defendants to such proceedings the husband or wife, widower or widow, heirs or devisees of any and all such persons appearing of record* as a former owner or encumbrancer, under the designation and description of the unknown husband or wife, widower or widow, or the unknown heirs or devisees of any such person shown by the public records of the county in which such lands are situated, at any time in the past, to have had any interest in said lands by reason whereof doubt as to the validity of the title to said lands may arise." (Our italics.)

It also provides that, in such proceedings, the plaintiff may in his complaint state that he asserts title against all persons whomsoever and that his purpose is to quiet the title to the lands as "against the world" and that he has named as defendants all persons within his knowledge through whom any hostile claim might be asserted. An affidavit must be filed with the complaint stating that the names of all persons as shown by the public records of the county by, under and through whom some claim, title or interest in the land might possibly be asserted, have been set forth in the complaint; that the plaintiff does not know whether the persons so named are living or dead or their legal residence, whether they are married or not, the name or whereabouts of the husband or wife or widower or widow of such person, if there be such husband or wife, etc., and if the person be dead leaving heirs or devisees, the plaintiff does not know their names or residence; that plaintiff claims full title to the real estate described as against all persons and that it is his purpose to quiet his title as against the world.

Upon the filing of such complaint and affidavit, and

also upon the filing of an affidavit for publication of notice as required by law, the clerk is required to publish notice of the pendency of such suit, in which publication, "the defendants who are named as the *unknown husband or wife, or widow or widower, or as the unknown heirs or devisees,* shall be thus designated and described." (Our italics.)

Said §1116b, *supra,* does not contravene or repeal any other law concerning title to real estate or actions affecting the same, but is only supplemental to other laws. §1116c Burns' Supp. 1921.

The purpose of this statute was to provide a method by which the unknown "husband or wife, widower or widow, heirs or devisees of any and all such persons appearing of record as a former owner or encumbrancer" might be made a party defendant and be bound by a decree quieting the plaintiff's title as to such husband, wife, widower, widow, heir or devisee whose name was unknown to the plaintiff. There is no claim that appellant belonged to any one of the classes named in said section. He is not the husband, wife, widower, widow, heir or devisee of any person shown by the records of the county at any time to have had an interest in said lands. He is not, therefore, bound by the decree quieting Blakely's title notwithstanding the provisions of the said section. In order that this section of the statute may be applicable, the action must be one of those named in the section, that is, it must be (1) an action to quiet or determine the title to real estate or some specific interest therein, or (2) an action to obtain title to or possession thereof, or (3) an action for partition, or (4) an action by an executor or administrator to sell to make assets to pay debts, or (5) an action to enforce or foreclose a mortgage or lien thereon. Not only must the action be one

of those named, but, in addition thereto, there must be (1) a break or hiatus in the record title of the real estate, or (2) there must exist a defect or an apparent defect in or cloud upon the title of such real estate on account of a defective or inaccurate description appearing in some matter of record, or (3) where it does not appear of record that a grantor or mortgagor was unmarried at the time of executing some deed or mortgage, or (4) where it appears from the records that a deed, will or mortgage or other instrument affecting the real estate was not properly executed, or that a mortgage or lien affecting the real estate has not been properly or duly released as disclosed by the public records of the county, "by reason whereof some doubt may be alleged or arise as to the complete validity of the title claimed or asserted" by the party prosecuting the action or proceedings.

While it is alleged in both the second and third paragraphs of answer that the action therein referred to was an action by Blakely to quiet title, there is no allegation in either paragraph of the existence of any break, hiatus or other defects in the title set out in said §1116b, *supra,* as being necessary to bring the cause within those designated in the statute. The simple fact that it was an action to quiet title was not sufficient. Nor does the evidence in the instant case show that the alleged defects in Blakely's title were sufficient to bring the case within said section of the statute.

Statutory provisions for acquiring jurisdiction of the person of a defendant by service of process by publication, or by personal service of process out of the state must be strictly pursued. *Eel River R. Co.* v. *State, ex rel.* (1896), 143 Ind. 231; *Vizzard* v. *Taylor, Treasurer* (1884), 97 Ind. 90.

It is only parties to judgments and those who are in

privity with them who are bound by judgments. *Thompson* v. *McCorkle* (1893), 136 Ind. 484, 492. Appellant was neither a party to the decree quieting Blakely's title, nor was he a privy of any one bound by that judgment. Whatever title he had to the property was that obtained by virtue of adverse possession. There was nothing on record in any of the public offices in the county to show that appellant ever had any claim or interest in the north half of the land in question. He was and had been in possession of it for about twenty-four years under claim of ownership. He testified that shortly after he purchased the south forty from the auditor, he received a deed for the north forty from a Mrs. Chandler, but this deed, as he says, was never recorded. In so far as the south half of the land in question is concerned, the register of school fund loans kept in the auditor's office shows this forty was sold by the auditor to appellant and that he had paid the purchase price in full.

Appellees also contend that under section 297 of the tax law, Acts 1919 p. 357, the same being a re-enactment of §10393 Burns 1914, the decree in favor of appellee Blakely cut off and foreclosed appellant from enforcing his claim or title to any part of the land in controversy. This section authorizes the holder of a tax deed to commence a suit to quiet his title thereto without taking possession of such land, and provides that all parties who have, or claim to have, or appear of record in any of the public offices of the county to have any interest in or lien upon such land shall be made defendants in such suit, and that no outstanding unrecorded deed, mortgage, lease or claim shall be of any effect as against the title or right of the complainant as fixed by the decree made in such cause. This contention cannot prevail under the facts in this case. The record in the auditor's office was suf-

ficient to give appellee Blakely notice that appellant might have some claim to or interest in part of the land. Blakely had not taken possession of the land in question when he filed his complaint to quiet title. Appellant had been in open and notorious and exclusive possession of the land, claiming to own the same, for a period of more than twenty years. Adverse possession of real estate continuously for a period of twenty years gives title. Appellant resided on the land in question and farmed it from 1894 to 1918, when he moved to the city of Bloomington. When he moved away from the farm, he left a few household articles and some farm implements on the land. He testified that he rented it to his brother Sam Bastin, named herein as James S. Bastin, and who is one of the appellees herein, for the crop season of 1919. Sam Bastin, however, denied that he ever rented the land from appellant. He did farm it in 1919 and, when Blakely secured his tax deed and when he began his suit to quiet title, was in possession of the land. In the absence of any evidence to the contrary, his possession will be presumed to be the possession of appellant. He makes no claim that he had any interest or claim to any of the land before he received the deed from Charles Blakely which was in November, 1919. It may, therefore, be assumed that whoever was in possession of the land prior to that date was in possession under appellant. The land was farmed in 1919. The instant case was tried and the judgment based upon the theory that the decree of Blakely quieting his title to the real estate had the effect to cut off and bar any claim of appellant, by virtue of the provisions of said §1116b, *supra*. This theory, as heretofore held, was erroneous, and leads to a reversal of the judgment.

On a retrial, the validity of the tax deed will necessarily be involved and we, therefore, proceed to a con-

sideration of the contention of appellant that such deed is invalid for the purpose of conveying title.

Section 10355 Burns 1914, Acts 1891 p. 199, §184, requires the auditor to post a copy of the list of delinquent lands and lots on the door of the courthouse, and also in some conspicuous place in each township at least three weeks before day of sale, to have such list published in one weekly newspaper of the county for three consecutive weeks before the sale. To such list, so posted and published, the auditor was required to attach a notice of sale which notice was also required to be posted in the same manner. It also provided that: "The county auditor shall, on or before the day of sale, insert at the foot of such list on his record a copy of such notice, and certify on said record, immediately following such notice, the manner in which the same was posted, and the places where the same was posted, and for what length of time it was printed and posted." This was not done. No such record was ever made. This failure of the auditor to insert a copy of the notice on his record, followed by the certificate as required by the statute, rendered the tax sale and deed thereafter issued to Blakely, invalid and ineffectual to convey title. *Knotts* v. *Tuxbury* (1917), 69 Ind. App. 248, 259. See, also, *Dixon* v. *Thompson* (1912), 52 Ind. App. 560; *Richcreek* v. *Russell* (1904), 34 Ind. App. 217, 229. No consideration, therefore, need be given to the question as to whether appellant had sufficient personal property out of which the taxes could be paid.

Appellees contend that appellant was an unknown claimant to the land, since he had no record title. In this connection, they call attention to that part of §10393, *supra,* which provides that "no outstanding unrecorded deed, mortgage, lease or claim shall be of any effect as against the title or right

of the complainant as fixed and declared by the decree made in such cause." Appellees say that appellant's claim of title is based only on an unrecorded claim, and that he is, therefore, bound by the decree in favor of Blakely quieting title though he was not a party to that decree. We are of the opinion that appellees place an unwarranted construction upon this section of the statute. The purpose of this statute was not to cut off the right of a party in actual possession of the real estate. Its purpose was to cut off all claims of a party whose title or claim was founded upon some instrument which had not been recorded. Possession of real estate is notice of whatever title or claim the person in possession has in the real estate. Possession of land is equivalent to constructive notice by record and is just as effective as notice imparted by the record. *Jeffersonville, etc., R. Co.* v. *Oyler* (1878), 60 Ind. 383; *Barnes* v. *Union School Township* (1883), 91 Ind. 301. In *Bliss* v. *Gallagher* (1915), 60 Ind. App. 454, cited by appellees, John Saxe, being the owner of certain lots, conveyed them to Joseph Waterman in May, 1892. The deed to Waterman was recorded June 21, 1893. On June 12, 1893, Waterman conveyed the lots to John Saxe and Sarah Saxe, husband and wife. This deed was not recorded until August, 1912. The lots were carried on the tax duplicate in the name of Waterman. All taxes were assessed upon the lots from 1893 to 1898, inclusive, in the name of Waterman, and being unpaid were returned delinquent. In February, 1898, the lots were sold for taxes to Gallagher, who later received a tax deed in statutory form. After recording his deed, he filed his complaint to quiet his title making Joseph Waterman a defendant. Such proceedings were had in that action as resulted in a finding and decree that the tax deed was ineffectual to convey title, that Gallagher had a lien for taxes and foreclosing the same.

A sheriff's sale was had on this decree and the lots sold and deeded to Gallagher in December, 1900. Gallagher at once took possession of the lots and continued in possession of them from that time until the time of the trial in 1912, in the meantime making valuable improvements thereon. Bliss purchased the lots from the Saxes, August 19, 1912, at a time when Gallagher was in possession of them. Neither Waterman, the Saxes nor Bliss was in possession of the lots, a fact clearly distinguishing that case from the one under consideration. In the instant case, appellant was in possession of the land. The purchaser and claimant under the tax sale were not in possession until after the decree in favor of Blakely had been entered of record.

If it could be said that appellant occupied the position of being in privity with any one who was a defendant in the suit brought by Blakely to quiet his title, there would be some merit in the contention that appellant is bound by the judgment in that action. *Emmons* v. *Harding* (1904), 162 Ind. 154, 162.

It has been said that possession is notice of title and that a party in possession of real estate cannot be deprived of title by court proceedings in which he is not a party. *Lowe* v. *Turpie* (1896), 147 Ind. 652, 688, 37 L. R. A. 233. See, also, *Blair* v. *Whittaker* (1903), 31 Ind. App. 664, 673.

It is elementary that a judgment is conclusive and binding only against the parties thereto and their privies. As to strangers, it is evidence only of its entry, and not of any fact on which it was based. *Minnesota Debenture Co.* v. *Johnson* (1905), 94 Minn. 150, 102 N. W. 381, 110 Am. St. 354; *Grigsby* v. *Akin* (1891), 128 Ind. 591.

The judgment rendered by the court in the action brought by Blakely was limited to the rights and claims of the defendants named therein. Appellant was not

344    APPELLATE COURT OF INDIANA,

Louisville, etc., Traction Co. *v.* Miller—82 Ind. App. 344.

a party to that action, is not bound by it as such, and is not a privy of any one who was a party to that judgment. He does not claim through any one who was a party to that decree. Said §10393, *supra,* in so far as it provides that "no outstanding unrecorded deed, mortgage, lease or claim shall be of any effect as against the title or right of the complainant as fixed and declared by the decree made in such cause," is not applicable to the facts in this case.

Appellee Blakely, when he filed his complaint to quiet title, was bound to take notice of the fact that the records in the auditor's office disclosed a state of facts that showed appellant might have a claim against part of the land therein involved. He was also required to take notice of the right of any one in possession. The court erred in overruling the demurrer to the second and third paragraphs of answer. The decision of the court is not sustained by sufficient evidence and is contrary to law.

Judgment reversed, with direction to sustain the motion for a new trial and for further proceedings.