**James L. POPP and Ruth Sipes as Co-Executors of the Estate of Louis G. Popp, Plaintiffs-Appellants,**

v.

**Claude E. HARDY and Rose J. Hardy, Defendants-Appellees.**

No. 10A01–8612–CV–346.

Court of Appeals of Indiana, First District.

June 8, 1987.

Maurice A. Byrne, Jr., Fox & Smith, Jeffersonville, for plaintiffs-appellants.

David D. Nachand, Jeffersonville, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants, James L. Popp and Ruth Sipes, as Co-Executors of the Estate of Louis G. Popp (Popp), appeal an adverse summary judgment rendered by the Clark Superior Court No. 2 in their suit to establish a prescriptive easement, which judgment was in favor of defendants-appellees, Claude E. Hardy and Rose J. Hardy (Hardy).

We reverse.

## STATEMENT OF THE RECORD

On March 8, 1985, Popp filed his complaint to enjoin interference with his prescriptive easement across Hardy's land: Count I proceeded on a prescriptive easement theory; Count II claimed an easement of necessity; Count III advanced an estoppel theory; and Count IV stated a deed reservation theory. In addition to the

injunction, Popp sought damages. Popp died on March 19, 1985, and James L. Popp (James) and Ruth Sipes, his children, as co-executors of his estate, were substituted as party plaintiffs on August 30, 1985. Hardy filed an answer in denial and thereafter filed a motion for summary judgment supported by the depositions of James and Ruth Sipes, and also by certified copies of a complaint and a decree in a quiet title action captioned "Bertha Earl v. Isaac M. Perry, et al.", the decree having been entered by the Clark Circuit Court on October 18, 1966. Popp's response to Hardy's motion for summary judgment contained the affidavits of Daisy Schubnell, Albert Lee Fisher, Ethel A. Whalen, Juanita Ann Speer, James E. Shields, Jr., and James. Popp also filed a motion for summary judgment, supported by the same affidavits.

The trial court granted Hardy's motion for summary judgment and denied Popp's. Relative to issues on appeal, the trial court found that Popp's use of the right-of-way was permissive, that the Bertha Earl quiet-title decree was res judicata, and that the alleged easement was insufficiently described.

### ISSUES

Popp presents five issues on appeal. Restated by us into three issues, they are: did the evidentiary material filed in trial court present a genuine issue of material fact on the following issues:

  I.  Was the Bertha Earl quiet-title decree res judicata, and thus a bar to Popp's suit;

  II.  Was the alleged prescriptive easement sufficiently described; and

  III.  Was the use of the right-of-way permissive, and thus has foreclosed Popp's claim.

### STANDARD OF REVIEW

The rules governing summary judgment are well settled. The trial court, and the reviewing court, must consider the evidentiary material most favorable to the party opposing the motion, and resolve all doubts against the movant. *Indiana University Hospitals v. Carter* (1983), Ind.App., 456

N.E.2d 1051. Even where the facts are undisputed the ability to draw from these facts conflicting inferences, which would alter the outcome, makes summary judgment inappropriate. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630, *trans. denied.* The evidence may not be weighed. *Id.* The burden is on the movant to demonstrate the absence of a dispute of material facts. *Id.*

However, the non-moving party may not simply rest on his pleading. When the moving party establishes the lack of genuine issue of material fact, the opposing party must go forward and contest the motion by setting forth specific facts which show that there is a genuine factual issue. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221.

A summary judgment proceeding is not a trial by affidavits, nor can it be used as an abbreviated trial. *Carrell, supra.*

### STATEMENT OF FACTS

The evidentiary material before the trial court most favorable to Popp is as follows. Since the late 1920's or early 1930's, Popp owned a 15–acre tract of land, known locally as the Koerner place, which he had acquired from his father. Hardy owned property denominated locally as the Whalen tract and the Creamer tract. For at least 53 years, from 1928 until 1981, Popp and his son, James, used a 20–foot-wide roadway across the Whalen and Creamer tracts which was described as extending along survey lines 148–149 and 166–167 of the Illinois Grant in Union Township, Clark County. Popp's father had used it since 1897. Popp used the right-of-way under a claim of right, openly, visibly, continuously, notoriously, and adversely to Hardy and his predecessors in title for a period of 53 years, and such use was with their knowledge and acquiescence until 1981. Popp used the road five or six times a year for access to the farm for plowing, and the planting and harvesting of corn, soybeans, and hay. Neither Hardy nor his predecessors in title complained of or objected to Popp's use of the right-of-way, and they

never asked him to stop using it. Popp never asked for nor was he ever given permission. The relationship between Hardy and his predecessors in title and Popp was friendly, and they did not talk of, nor dispute, the right-of-way. In 1959, highway I–65 was established and severed Popp's land. Prior to that time, four possible means of ingress and egress existed, but thereafter, there remained only one—across Hardy's property. Without the right-of-way the 15 acres was landlocked, though a stream called Muddy Fork Creek could have been bridged at great expense.

Many of the above facts are derived from James's affidavit and his deposition. However, his evidence was corroborated in a number of important particulars by others. Juanita Ann Speer, the widow of one predecessor in title, John L. Elrod, and the daughter-in-law of other predecessors, Carl and Myrtle Elrod, confirmed that Popp had farmed the 15 acres, and, in the process, traveled back and forth across the roadway to plow, plant, cultivate, and harvest. Popp always used the right-of-way when needed without notice, request, or permission, and the Elrods never complained of, interrupted, or questioned the use. Speer's personal knowledge covered the period from 1955 to 1967. The Elrods knew of the use, but there was no agreement or permission, it was "something that just was always done." *Record* at 97. Speer stated that when Carl Elrod divided his farm among his family, she saw a sketch or map prepared by him upon which was marked "the Louis G. Popp right-of-way." *Record* at 97. James E. Shields, Jr., an erstwhile employee of Popp, confirmed the adverse use from the late 1950's until 1968. Daisy Schubnell stated that, to her knowledge, Popp traveled the road to farm along the east side of the Whalen property in the 1930's openly, continuously, and without interruption. Albert Lee Fisher added in his affidavit that, to his knowledge, Popp used the road regularly, openly, and publicly to get to his farm from 1926 to 1932, and from 1947 to 1980. Ethel A. Whalen stated that Popp used the road openly, visibly, continuously, and without interruption from the Great Depression until the Whal-

en tract was sold in 1943. Other facts will be set forth under appropriate headings.

## DISCUSSION AND DECISION

### ISSUE I: *Res judicata*

The trial court held that the Bertha Earl quiet-title decree entered on October 18, 1966, was res judicata and foreclosed any claim by Popp prior to that date. Because 20 years had not elapsed since then, any new right of prescriptive easement would have not yet matured. On September 8, 1965, Bertha Earl filed a complaint in the Clark Circuit Court entitled "Complaint To Quiet Title Against The World" against Isaac M. Perry and a large number of named persons, including Carl and Myrtle Elrod. *Record* at 60. The complaint, in the classic style familiar to older law practitioners, also named as defendants the children, descendants, heirs, unknown husbands and wives, widows and widowers, creditors, legatees, devisees, etc., of the named defendants, as well as all persons who might assert any title, claim, or interest in and to the real estate, all of whom were unknown to the plaintiff. Specifically, the complaint alleged certain defects in the plaintiff's chain of record title, and it set forth the names of the grantors and the appropriate deed record in which the defect appears by book and page number. The numerous defects covered a period from 1850 to 1954, and concerned the marital status of certain grantors as well as certain defective or erroneous descriptions of the real estate. The complaint concluded:

"That by reason of the various defects in the title to said real estate, as shown in the preceding paragraphs and by the records aforesaid, some doubt may be alleged or arise as to the complete validity of the title...."

*Record* at 65.

A decree was entered on October 18, 1966. Following the complaint, it set out the defects by book and page number, and quieted the title. As relevant here, the trial court in 1966 found that Carl and Myrtle Elrod, who are predecessors in title to the Hardy land involved here, were the

owners in fee simple of a 20–foot right-of-way because of an old deed reservation. That 20 feet is a part of the right-of-way being contested here. Significantly, at no place in the prior proceeding was Popp made a party, nor was his claimed prescriptive easement made an issue. Hardy now claims, as the trial court found, that the Bertha Earl quiet-title decree is res judicata on the issue of Popp's prescriptive easement.

Before res judicata operates to bar a subsequent action, it must be shown: (1) that the former court had jurisdiction; (2) that the matter now in issue was or might have been determined in the prior suit; (3) that the former controversy was between the same parties or their privies; and (4) that the prior judgment was entered on the merits. *American National Bank & Trust Co. v. Hines* (1968), 143 Ind.App. 217, 239 N.E.2d 589, *trans. denied.* Clearly, the issues in Bertha Earl's suit did not encompass Popp's claim, and Popp was not made a party. Bertha Earl's quiet-title suit was between the Elrods and her as to the 20–foot strip in fee simple, and did not include any claim by the Elrods against Popp concerning a prescriptive easement over the same land. However, Hardy claims that the broad procedure set forth in IND.CODE 32–6–4–1 for quiet-title actions against the world is sufficient to foreclose Popp. We disagree. The case of *Bastin v. Myers* (1924), 82 Ind.App. 325, 144 N.E. 425, *trans. denied,* is dispositive.

In that case, one Thomas H. Bastin had acquired land under circumstances that established ownership by adverse possession for a period of 24 years. The land was sold at a tax sale wherein the procedure was fatally defective. The purchaser at the tax sale brought his suit under IND.CODE 32–6–4–1 to quiet title against the world and a decree was entered. Bastin had not been made a party. Thereafter, Bastin brought his own suit for quiet title against the purchaser at the tax sale and his successors in interest, who defended on the basis that the original quiet title suit was res judicata. The appellate court disagreed, and stated:

"The purpose of this statute [sec. 1116(b) (Burns 1921 Supp.)] was to provide a method by which the unknown 'husband or wife, widower or widow, heirs or devisees of any and all such persons appearing of record as a former owner or encumbrancer' might be made a party defendant and be bound by a decree quieting the plaintiff's title as to such husband, wife, widower, widow, heir or devisee whose name was unknown to the plaintiff. There is no claim that appellant belonged to any one of the classes named in said section. He is not the husband, wife, widower, widow, heir or devisee of any person shown by the records of the county at any time to have had an interest in said lands. He is not, therefore, bound by the decree quieting Blakely's title notwithstanding the provisions of the said section. In order that this section of the statute may be applicable, the action must be one of those named in the section, that is, it must be (1) an action to quiet or determine the title to real estate or some specific interest therein, or (2) an action to obtain title to or possession thereof, or (3) an action for partition, or (4) an action by an executor or administrator to sell to make assets to pay debts, or (5) an action to enforce or foreclose a mortgage or lien thereon. Not only must the action be one of those named, but, in addition thereto, there must be (1) a break or hiatus in the record title of the real estate, or (2) there must exist a defect or an apparent defect in or cloud upon the title of such real estate on account of a defective or inaccurate description appearing in some matter of record, or (3) where it does not appear of record that a grantor or mortgagor was unmarried at the time of executing some deed or mortgage, or (4) where it appears from the records that a deed, will or mortgage or other instrument affecting the real estate was not properly executed, or that a mortgage or lien affecting the real estate has not been properly or duly released as disclosed by the public records of the county, 'by reason whereof some doubt may be alleged or arise as to the com-

plete validity of the title claimed or asserted' by the party prosecuting the action or proceedings.

While it is alleged in both the second and third paragraphs of answer that the action therein referred to was an action by Blakely to quiet title, there is no allegation in either paragraph of the existence of any break, hiatus or other defects in the title set out in said sec. 1116b, *supra,* as being necessary to bring the cause within those designated in the statute. The simple fact that it was an action to quiet title was not sufficient. Nor does the evidence in the instant case show that the alleged defects in Blakely's title were sufficient to bring the case within said section of the statute."

*Id.* at 337–38, 144 N.E. at 429–30.

Though old, this case has never been reversed, nor has its holding been distinguished.[1] Upon examination of IND. CODE 32–6–4–1, we conclude that the *Bastin* court was correct in its analysis. The court further held that no privity existed between Bastin and the tax sale purchaser. Since IND.CODE 32–6–4–1 is limited in its scope and does not foreclose adverse possession claims, Popp was not made a party, and his claim was not an issue, the trial court erred in foreclosing Popp on the basis of res judicata. We are equally unpersuaded that the doctrine of virtual representation is applicable. That doctrine applies only where the interests are properly represented by the holder of the prior estate. *Krick v. Klockenbrink* (1968), 144 Ind.App. 55, 242 N.E.2d 848, *trans. denied.* Here, Popp's interests and Carl Elrod's interests were adverse.

Hardy attempts to foreclose Popp by claiming he is one of the unknown persons made defendants in Bertha Earl's com-

plaint. We have difficulty perceiving how someone openly using a piece of a plaintiff's land could be unknown.

## ISSUE II: *Description of Easement*

■ The trial court held that the alleged prescriptive easement was not sufficiently described. The evidentiary material showed that the prescriptive easement was 20 feet wide and extended along the east side of the Whalen and Creamer tracts along survey lines 148–149 and 166–167 of the Illinois Grant in Union Township, Clark County. Maps attached to the affidavits were explicit. Other monuments, such as roads, streams, and the like, help fix the location. We hold that, for purposes of creating an issue of fact in a summary judgment proceeding, the description is sufficient.

## ISSUE III: *Permissive Use*

The trial court found that Popp could not succeed on his claim by reason of the fact that the alleged use of the roadway over Hardy's property was permissive, and not adverse. The facts giving rise to this finding are gleaned from James's deposition. In his deposition, James stated that Johnny Elrod was the son of Carl and Myrtle Elrod and the Elrods were Hardy's predecessor in title. Carl Elrod told Popp to "[g]o on ahead through," and Johnny Elrod also gave Popp permission to use the easement, saying, "just go on through." *Popp Deposition* at 30. Hardy and his predecessors in title had allowed Popp to use the road with permission. Before 1959, James never saw his father ask anyone for permission. After 1959, they asked Carl and also sought permission from Johnny Elrod and Hardy. Hardy never made any objection.

---

1. *Bastin* was cited in *Grantham Realty Corp. v. Bowers* (1939), 215 Ind. 672, 22 N.E.2d 832. *Grantham* did not diminish *Bastin* as authority here. That case involved a tax sale of land in 1910. The purchaser brought a quiet title suit in 1913 against the record title owner by name and his unknown heirs, and judgment was entered. Challenge was made in a subsequent quiet title suit that since the act, IND.CODE 32–6–4–1, which was enacted in 1915, was not in existence in 1913, the judgment was invalid.

*Bastin* was quoted as saying that the purpose of the 1915 act was to provide a method by which unknown heirs of a party of record could be made a party and found. The *Grantham* court merely stated that prior statutory authority already existed to make unknown heirs of a record holder parties and that the 1915 act was provided as an additional and more comprehensive remedy. *Grantham* in no way involved title acquired by adverse possession.

Sometimes Hardy was asked, and sometimes he was not.

Hardy was deposed. He stated that he acquired the property in 1967 and thereafter Popp used the road up to 1977. Hardy did not question the use, nor make any attempt to stop Popp. Before 1977, Popp used the road to get in and out of the farm with farm machinery, and used it five or six times a year as far back as 1959, when highway I–65 went through. On May 15, 1982, Popp told Hardy that he was going to quit farming the 15 acres because it flooded and he had trouble getting in and out. James asked permission to go through and Hardy agreed. In 1981, Hardy sent word by James's hired hand, Shields, that he wanted to talk to him about the use of the roadway. James never came. (In his deposition, James stated that Hardy had forbidden further use.) Hardy made no statements concerning Popp's use of the road prior to 1959. Significantly, Hardy made no claim in his deposition that Popp's use of the road was only on the condition of permission.

■ A prescriptive easement is acquired by an actual, hostile, open, notorious, continuous, uninterrupted, and adverse use for 20 years under a claim of right with the knowledge and acquiescence of the owner. IND.CODE 32–5–1–1; *Searcy v. LaGrotte* (1978), 175 Ind.App. 498, 372 N.E.2d 755. A prescriptive easement cannot be acquired by permissive use. *Hutchinson v. Worley* (1958) 129 Ind.App. 157, 154 N.E.2d 389. Open and continuous use raises a rebuttable presumption that the use is adverse. *Bulatovich v. Easton* (1982), Ind.App., 435 N.E.2d 997, *trans. denied.* Whether use is permissive is a question of fact. *Jeffers v. Toschlog* (1978), 178 Ind.App. 603, 383 N.E.2d 457.

Hardy claims that the statements made by James in his deposition are fatal, as they disclose permissive use, and the damage cannot be repaired by a subsequent affidavit. Hardy cites *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, as support.

In that case, a personal injury suit against Ireland Road Grace Brethren, Inc.

and the City of South Bend, the sole evidence before this court on motions for summary judgment filed by defendants was the plaintiff's deposition, in which he made damaging admissions, and subsequently-made contradictory affidavits which attempted to repair those admissions. The court of appeals held that the trial court could not grant a summary judgment when the affidavit contradicted statements made in the deposition. A deeply divided supreme court, Justices Hunter and DeBruler dissenting, in granting transfer said:

> "This is a question of first impression in this state. Other federal and state jurisdictions have reached decisions contrary to our Court of Appeals' decision and we find those cases to be well reasoned:
>
>> 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'
>
> Gaboury's affidavit contradicts sworn statements in his deposition but he fails to offer any explanation for the discrepancies. We do not feel that issues of fact should be created in this manner and thus hold that 'contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant.'" (Citations omitted.)

*Id.* at 1314.

■ In the case at bar, we believe the facts and posture of the case are readily distinguishable. Though damaging, we do not believe the contradictory statements are fatal. First, the evidence before the trial court can support the conclusion that the prescriptive easement had already been established by 1959. Further, James's affidavit was corroborated in a number of substantial ways, as shown by the Statement of Facts, by other independent witnesses, some of whom are members of families that were predecessors in title, against

whom the adverse possession ran. In *Gaboury*, only the plaintiff's contradictory testimony was involved. Therefore, the credibility of James is not the only issue of fact, which seemed to be the distinguishing factor in *Gaboury*.

In conclusion, we are of the opinion that a genuine issue of material fact exists. Therefore, this cause is reversed. The trial court is directed to overrule both motions for summary judgment and set the cause for trial on the merits.

Judgment reversed.·

RATLIFF, C.J., and ROBERTSON, J., concur.