Sidney Squibb, J.
This claim originally for $130,000, was tried before me in Syracuse. During the trial, I had granted claimant’s motion to amend her pleading to increase the principal of her demand by $2,087.72 for the repayment of an asserted apportionment of real property taxes paid for the calendar year 1965. An order to that effect was signed by me.
This litigation arose out of the appropriation of claimant’s entire real property which the State Superintendent of Public Works deemed necessary to be acquired for the construction of “ Interstate Route 505-3-2.22 ” from Jefferson Street to North Salina Street in the City of Syracuse, Onondaga County, pursuant to section 30 of the Highway Law.
The claim (pleading) was filed on December 24, 1965 and served on the Attorney-General on December 27, 1965. Each of these acts was timely.
The map and description of this fee appropriation of 8,323 square feet or 0.191± acre, designated as Map No. 854, Parcel No. 1164, was certified as accurate on May 10,1962 by O’Brien & Gere, consulting engineers, through Joseph I. Phillips, a licensed surveyor, and on May 11, 1962 by the State Department of Public Works acting through E. E. Towlson, District Engineer, District No. 3. More than two years later, the description and original tracing of the map were officially filed in the office of that department on November 6, 1964. Certified copies thereof were subsequently filed in the following respective offices: Department of State on November 16, 1964 and the Clerk of Onondaga County on February 2, 1965. Said February 2, 1965 *239 is the date when title to the real property taken vested in the sovereign State.
The description of the appropriated real property as set forth in the “ duplicate of the Official Map ” annexed to and referred to in paragraph “ 5 ” of the filed claim (pleading), is adopted herein as though particularly now repeated verbatim. There was excepted from this appropriation “ all the right, title and interest, if any, of the United States of America in or to said property ’ ’.
On the appropriation day, legal title to this real property was in the claimant. Her deed was from Ruth A. Page, dated and acknowledged on February 11, 1964 and recorded in the office of the Clerk of Onondaga County on February 17,1964 in Book 2186, page 418.
Claimant’s real estate was a corner property; more accurately, it was situated on two corners, i.e., the southwest corner of Erie Boulevard East and South McBride Street as well as the northwest corner of East Water Street and said South McBride Street in Syracuse. It had three frontages, i.e., 104± feet on Erie Boulevard East, 104± feet on East Water Street and 80.22± feet on South McBride Street. Its westerly dimension was 79.83± feet. The total area was 8,323 square feet.
This property had been in the ownership of claimant’s family since 1925, a period of about 40 years. Although zoned “ Commercial A ”, it was being utilized as. a gasoline service station pursuant to a special permit granted under the zoning law. Such had been the land’s use for the most recent 25 years. The Page family had leased the premises since 1940 to Gulf Oil Corporation. This 10-year leasehold was cancelled during the last year of said term and replaced by lease dated April 28, 1950 providing for automatic renewals for the second 10 years ending April 16, 1960. In April of 1960 there was a three-year lease until April 16,1963, followed by the 1963 lease for the three years ending April 16, 1966. It was during the pendency of this last lease, that the instant appropriation occurred on February 2,1965. Such imminent appropriation had become public knowledge for some time prior thereto.
The appraisers herein differed on the highest and best use of this property on the taking date. I agree with the opinion of claimant’s appraiser that this was: a gasoline service station (as it has been utilized for 2% decades). The defendant disagreed, endeavoring to prove that the highest and best use was “ commercial ”. As to this fundamental element, I was not favorably impressed with the factual bases presented, the rea *240 soiling employed and the conclusion reached by defendant’s appraiser.
His filed appraisal containing vast details (including irrelevancies) in its 49 pages, devoted a portion of its page 9 to “ Highest & Best Use of Property ”. The first sentence thereof clearly stated that ‘ ‘ The highest and best use of the property is for commercial purposes, including automotive facilities or service stations as evidenced by the zoning and surrounding improvements along Erie Boulevard East.” On the trial, the defendant’s witness amended this sentence by deleting the alternative “ or ” and substituting therefor the words “ in connection with ”. Thus the import of the sentence was changed to ‘ ‘ commercial purposes, including automotive facilities in connection with service stations ”. This was hindsight which did not impress me favorably.
The remaining sentence of said appraisal under the quoted heading, was predicated upon “ Exhibit H in the Addendum ”. During the trial, the defendant obtained permission to delete said page from its filed report. As eventually received in evidence, the filed appraisal as corrected, did not include said page. Apart from the foregoing amendments, the claimant’s proof preponderated on the highest and best use.
The State’s experienced counsel labored assiduously to rehabilitate his expert who made changes on six pages of his filed report and deleted two entire pages. A number of these changes were matters of substance. Others were routine corrections. They were weighed accordingly.
At the time of the taking, the premises were in operation as a gasoline service station. On the land, there was a complete set of improvements, all in good condition, the major items being about 25 years old. There were facilities for the bays of gasoline pumps, underground tanks, driveways, macadam surface paving and the service station building including an office with display area, storage space, separate toilet facilities for ladies and gentlemen and other usual accessories.
In the company of authorized and knowledgeable representatives of the respective parties hereto and others, I viewed the situs of claimant’s real property, the surrounding area and requested alleged comparables. Photographs of the demolished improvements at bar separately made for each of the parties hereto and other graphic evidence of claimant’s real property and alleged comparables, were received in evidence and were helpful in my deliberations and determinations.
Claimant’s expert was of the opinion that this taking was worth $107,800 comprised of $91,500 for the land and $16,300 for *241 the improvements. The defendant’s expert assigned a total value of $52,500, all for the land and none for any of the improvements. It is my conclusion (as elucidated, post) that the land was worth $73,243 and that on the record before me, no award can be made for the improvements.
The approaches of the respective experts in their filed appraisals differed greatly. For the land evaluation, claimant had comparable sales, whereas the defendant’s filed appraisal baldly stated at the bottom of page 5 that “ There were no sales of sufficiently comparable properties to develop a documented Market Approach.” During the trial, the defendant amended this sentence by inserting the word “improved” between “ comparable ” and “ properties ”. The changed sentence became “ There were no sales of sufficiently comparable improved properties to develop a documented Market Approach.”
Initially, the same approach by defendant’s expert was further set forth at page 18 of the filed appraisal under the heading of “Analysis”, as “ A search of the Syracuse market failed to reveal the sale of any reasonably comparable service station sales, particularly for continued use as such a property. Sales S-l through S-7 have been included, however, for informational purposes only.” On the trial, there was added thereto at the end of the last sentence: “ for improved properties ”. Moreover, when this expert testified before me, he did use the market approach for his land evaluation. Despite the unequivocal statement that the afore-identified “Sales S-l through S-7” were included in his report ‘ ‘ for informational purposes only ’ ’, the witness relied heavily on sale S-7. It is noteworthy that claimant’s appraiser also used this same transaction as his claimant’s comparable No. 9 as a base, but reached a higher evaluation for claimant’s land.
Claimant’s value for the land was $11 per square foot. The defendant’s reasoning became $6.31 per square foot. In my consideration of the entire record, after studying, assaying and adjusting all the proof herein, it is my finding that this land had a before value of $8.80 per square foot. In doing so, I weighed the relevant factors of claimant’s property and com-parables as to highest and best uses, sizes of plottage, the areas of location, frontages, corners, zones, special permits for uses, locations as to the core of the city business district, prevailing economic conditions and trends in values, arteries of traffic, visibility to moving traffic, time of transaction, and proximities to beneficial and/or detrimental features involved. The 8,323d: square feet herein at said $8.80 per square foot had a land value of $73,243.
*242 This conclusion was reached without reliance on any 1 ‘ capitalization method ” by claimant’s expert or defendant’s expert, either as a primary approach or as a “ check ’ ’ thereon. Neither base economic rental suggested by the respective parties’ witnesses, was supported sufficiently by the “ foundation ”, proof and opinion evidence advanced. There was not enough probative force in any of the theoretic rentals proposed, to warrant judicial adjustment in the performance of my function.
The evaluation of the improvements presented another problem. It is the law that to substantiate an appraiser’s opinion there must be demonstrable bases therefor, rather than the subjective judgment of the expert. At bar, it was the defendant’s position that the improvements had no value because they could not be used for its alleged highest and best use. Therefore, it was a consistent technique for the defendant to offer no proof of the improvements’ worth.
The claimant’s filed appraisal at page 9 of Exhibit 13 for identification contained an “ IMPROVEMENTS VALUE” based on reproduction cost less depreciation. The improvements were not unique and were not a specialty. This was emphasized by defendant’s counsel who objected to said method of evaluation in the proffered exhibit. I sustained said objection. That is the law presently in our State. Accordingly, such matter was stricken from page 9 and did not become part of the appraisal report in evidence as claimant’s Exhibit 14. The only other possibly acceptable proof of value of the improvements stemmed from claimant’s “ capitalization method ” near the bottom of page 11 of Exhibit 14. This never attained the dignity of legal proof because of the insufficient and unsupported base of this approach.
One cannot judicially ascribe or find a legally acceptable evaluation of the improvements on this trial record before me. Were there a monetary evaluation for the improvements found by me, this decision would be thrown into a repository of other unfortunate determinations where the insufficiency or absence of legal proof compelled an appellate court to direct a retrial. (Such instances are usually not the fault of a trial court or counsel faced with appraisals predicated on invalid and illegitimate facets.) At bar, I had the benefit of experienced and discerning trial lawyers for each of the parties.
The fair and reasonable market value of claimant’s real property on said February 2,1965, the taking date at bar, was $73,243, as stated, supra. From this there must be deducted $31,500, the partial payment received by the claimant from defendant, making the balance of $41,743 due for the fee taking herein.
*243 To this there is added $2,087.72 as the apportionment from February 2, 1965 to December 31, 1965 of the 1965 real estate annual taxes of $2,291.24, the principal amount paid by the claimant for that year. Therefore, the amount due to the claimant from the defendant on this claim as amended, becomes $43,830.72 with statutory interest thereon.
The award to the claimant herein is exclusive of the claims, if any, of persons other than the owner of the appropriated property, her tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.
The parties in open court having waived the submission of proposed decisions, the clerk is directed to enter judgment in favor of the claimant, Winnefred E. Page Hicks Baker, against the defendant, the State of New York, for $43,830.72 with statutory interest thereon from February 2, 1965 to August 2, 1965 and from December 24, 1965 to the date of entry of the judgment herein.