INDIANA INSURANCE COMPANY *v.* SHIRLEY JORDAN NOBLE,
BY HER NEXT FRIEND, EARL JORDAN.

[No. 569A84. Filed December 30, 1970. Rehearing denied
February 2, 1971. Transfer denied June 8, 1971.]

*Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellant.

*Kenneth A. King,* of Kendallville, *Arch N. Bobbitt,* of Indianapolis, for appellee.

SHARP, J.—This action was commenced by the filing of a complaint in the Noble Circuit Court on September 25, 1968, by the Appellee, Shirley Jordan Noble, by her next friend, Earl Jordan. Said complaint alleges that on the 16th of April, 1966, Appellant, Indiana Insurance Company, issued a certain automobile liability insurance policy to the Appellee, Shirley Jordan Noble. Said complaint further alleges that on October 14, 1967, Appellant, Indiana Insurance Company, was notified by certified mail that a suit for damages had been filed by said Appellee against one Eugene Donat for injuries sustained in an accident between the Appellee and said Donat on April 20, 1966. The Appellant Company was asked to join in said suit because of the uninsured motorist clause in said insurance policy but denied any claim on said policy by the Appellee on October 25, 1967. On June 22, 1968, judgment was entered for the Appellee against Donat for the sum of $20,000.00.

On the 6th day of December, 1968, the Appellee filed its unverified motion for summary judgment supported by the affidavit of Attorney Kenneth A. King. The essential allegations of said motion for summary judgment are as follows:

"1. That it enter, pursuant to Sec. 2-2524 Burns' Indiana Statutes Annotated, 1965 Replacement, a summary judgment in plaintiff's favor on the ground that there in no genuine issue as to any material facts and that the plaintiff is entitled to judgment as a matter of law;

"2. That, in the alternative, if summary judgment is not rendered in plaintiff's favor upon the whole case or upon the relief asked, and trial is necessary, the Court, at the hearing on the motion, by examining the pleadings and evidence before it, and by interrogating counsel ascertain what material facts are actually in good faith controverted, and, thereupon, make an Order specifying the facts that appear without substantial controversy and directing such further proceedings in the action as are just;

"3. That this motion is based on the undisputed following facts and admitted by the defendant;

a. That there was in effect at the time of the accident a policy of insurance carrying an uninsured motorists clause in the amount of Ten Thousand Dollars ($10,000) and on which a premium of Three Dollars ($3.00) was paid for said insurance;

b. That there was also in effect at said time a medical payment clause in said insurance policy in the amount of One Thousand Dollars ($1000) for which the premium was paid in the amount of Fifteen Dollars ($15.00) by the defendant;

c. That the plaintiff recovered judgment against Eugene Donat and that said Eugene Donat did not have any insurance;"

The essential allegations of the affidavit of Kenneth A. King are as follows:

"1. That the defendant, through his agent, K. L. Zimpleman, Claims Supervisor, by oral conversation and by writing was notified at the time the suit of Shirley Jordan by her next friend, Earl Jordan against Eugene Donat was filed and that said defendant refused to enter into said law suit;

"2. That said defendant did admit, through his agent, K. L. Zimpleman, Claims Supervisor and Lyle D. Brucker, Vice President of said defendant company that there was an 'uninsured motorists clause' in effect at the time of the accident in which a judgment was rendered against the defendant Eugene Donat for personal injury in the amount of Twenty Thousand Dollars ($20,000);

"3. That said defendant, through his agent Lyle D. Bruckner, Vice President admits that there was a medical expense provision in said policy and that they did pay out the sum of Four Hundred Forty Seven Dollars and Eighty Three Cents ($447.83) for medical expense;

"4. That there is no genuine issue as to any material facts and that plaintiff is entitled judgment as a matter of law."

On the 12th day of December 1968, the Appellant Insurance Company filed an unverified "Showing in Opposition to Motion for Summary Judgment", the essential allegations of which are:

"1. A motion for summary judgment lies only at the appropriate time when it appears there is no material issue of fact before the court.

"2. Defendant at this time has not filed answer to plaintiff's complaint, at which time the defendant will deny that the contract referred to in plaintiff's complaint, which is not attached to plaintiff's complaint, is not applicable to the present suit of plaintiff.

"3. Defendant asserts that said contract upon which plaintiff relies affirmatively prohibits such an action as is brought by plaintiff to recover on a judgment secured without the written consent of this defendant.

"4. Said contract provides for conditions precedent to any action or recovery from this defendant by plaintiff, which conditions precedent have not been met by plaintiff.

"5. In no event can defendant be liable to plaintiff if in fact there is no negligence on the part of the so-called uninsured motorist, and when there is contributory negligence on the part of the plaintiff. It is respectfully submitted that the evidence will demonstrate that there was no negligence on the part of the uninsured motorist, and that there was negligence on the part of plaintiff in stopping her vehicle in a blinding rain storm in a travelled lane of the highway directly in front of the uninsured motorist's vehicle.

"6. While defendant has not been furnished by plaintiff an exact copy of the contract of insurance upon which she relies, the defendant attaches hereto and makes a part hereof a document marked Exhibit A which purports to be a certified copy of a specimen policy believed to be the policy issued to plaintiff.

"7. Attached hereto, made a part hereof and marked Exhibit B is the affidavit of William L. Wilks based upon his personal knowledge.

"8. Attached to the affidavit of Mr. Wilks are portions of his file including the police report of the investigating police officers, a statement of Eugene Donat, the alleged uninsured motorist, the statement of Shirley Jordan, plaintiff herein, and a letter of November 5, 1968, of explanation of the Indiana Insurance Company by Lyle D. Brucker, Vice President, to the Insurance Commissioner of Indiana."

Said unverified showing was also supported by the affidavit of William L. Wilkes, which stated:

"1. Deponent believes that a policy of insurance was issued to plaintiff containing the terms and provisions of the family automobile policy which is a part of this showing and marked Exhibit A.

"2. Said policy of insurance, and particularly in Part IV thereof contains the following provision:

'Coverage U—Family Protection (Damages for Bodily Injury) To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination, as to whether the insured or such representative is legally entitled to recover such damages, and so if the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

'No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.'

"3. No agreement as provided by said policy provision was entered into between plaintiff and defendant, and no determination made as to whether the insured was legally entitled to recover such damages, nor was any arbitration proceeding instituted or finalized.

"4. The action prosecuted by plaintiff against the alleged uninsured motorist was not prosecuted with the written consent of the Indiana Insurance Company, and in fact, plaintiff's attorney was at all times advised that the Indiana Insurance Company would not consent to said suit nor participate therein nor be bound by any judgment obtained therein.

"5. Said policy of insurance also contained the following provision:

'Arbitration. If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Part.'

"6. No submission to the American Arbitration Association was ever made by anyone as required by the terms of the contract voluntarily entered into between plaintiff and defendant.

"7. In any event, even were the conditions precedent met by plaintiff, which they were not, prior to the institution of the present action, said policy of insurance limits the liability of Indiana Insurance Company to Ten Thousand Dollars ($10,000.00).

"8. A review of the file of investigation of the Indiana Insurance Company, including the statements taken of both drivers, which are attached hereto, and of the report of the investigating police officers, which report is also attached to this affidavit, indicates to the deponent that a serious question exists as to whether or not liability exists between the uninsured motorist and plaintiff by virtue of the apparent contributory negligence on the part of the plaintiff in stopping her vehicle in the travelled portion of the highway contrary to statute and common law in the face of following traffic. The police report fails to indicate negligence on the part of the uninsured motorist, but the police officers place the blame essentially on the weather conditions at the time when plaintiff's vehicle was stopped in the travelled portion of the highway.

"9. Plaintiff's attorney has been fully cognizant of the Indiana Insurance Company position and their refusal to consent or participate in a suit against the uninsured motorist as evidenced by the letter of explanation to the Department of Insurance by Mr. Lyle D. Brucker of Indiana Insurance Company which outlines in detail the various contacts

with plaintiff's attorney and communications with him and asserts the Indiana Insurance Company position.

"10. At the appropriate time and after plaintiff has furnished to defendant a copy of the policy upon which this action is apparently based, the defendant, through deponent, as its attorney, intends to file an answer denying that plaintiff's failure to perform the conditions precedent to an action on the policy and by virtue of the expressed provision prohibiting the exact method being attempted by plaintiff to recover on said policy, and further intends to deny that liability exists to the plaintiff from the uninsured motorist."

Among the facts which are disclosed by the various exhibits attached to the affidavit of William L. Wilkes is the undisputed showing that Appellant, Shirley R. Jordan, was seventeen years of age at the time of the accident in question on April 20, 1966.

On February 18, 1969, the trial court entered the following judgment:

"1. That on April 16, 1966, defendant and plaintiff entered into a contract of automobile insurance, which contained the following clauses: (The provisions of said policy of insurance above referred to are here set out). That said policy was in full force and effect on April 20, 1966, and that on said date plaintiff was involved in an automobile accident with an uninsured motorist.

"2. That on October 14, 1967, defendant was notified by certified mail that a suit for damages had been filed against said uninsured driver and that defendant was requested to join in said suit under the terms of the above policy.

"3. That on October 25, 1966, defendant refused to join in said suit and made no demand for arbitration.

"4. That on July 22, 1968, plaintiff recovered judgment against said uninsured motorist in the sum of $20,000.00, and that no part of said judgment is collectible against defendant.

"5. That the limits of liability under the said policy of insurance was $10,000.00, and that defendant has heretofore paid out $447.83 for medical expense.

"6. That there is no material issue of fact involved in this cause and that plaintiff should prevail on her motion for summary judgment as a matter of law.

"7. And that plaintiff shall have and recover from defendant the sum of $_____.

"It is now therefore considered, adjudged, and decreed by the court that the plaintiff shall have and recover from the defendant the sum of $9552.17, together with her costs in this matter made and taxed at $_____."

The Appellant claims that the entry of said summary judgment is erroneous.

We must determine this case on the basis of the law of Indiana as it was on April 16, 1966. It is therefore elementary that Acts 1969, ch. 340, as found in Burns' Ind. Stat. Anno., § 3-227, et seq., can have no application to this case.

The Appellant argues that Acts 1852, ch. 3, § 1, as amended by Acts 1939, ch. 22, § 1, found in Burns' Ind. Stat. Anno. (1968 Repl.), § 3-201, applies and specifically recognizes arbitration. However, § 3-201 by its own express terms excepts infants. Under the law of Indiana a seventeen year old girl is certainly an infant in this regard. It is also undisputed from material which the Appellant Insurance Company placed before the court that Appellant was seventeen years of age at the time the policy in question was issued and at the time of the accident. Even more liberal arbitration statutes which provide for the arbitration of future disputes have been held inapplicable to minors. *McCarthy* v. *M.V.A. I.C.*, 16 App. Div. 2d 35, 224 N. Y. S. 2d 909, affirmed, 12 N. Y. 2d 922, 188 N. E. 2d 405, 238 N. Y. S. 2d 101 (1963); *Hickey* v. *Insurance Co. of N. America*, 239 F. Supp. 109 (D.C. Tenn. 1965); *Kessler* v. *Cosmopolitan Mut. Ins. Co.*, 33 Misc. 2d 824, 218 N. Y. S. 2d 357 (1961); *Scheck* v. *M.V.A.I.C.*, 40 Misc. 2d 575, 243 N. Y. S. 2d 288 (1963). See also 43 Notre Dame L.J. at p. 19. Therefore, Burns' Ind. Stat. Anno., § 3-201, is not authority for the Appellant in this case. In addition, Burns' Ind. Stat. Anno., § 3-201, applies to "any controversy existing" and does not provide for the arbitration of a future dispute.

In 1965 the Indiana General Assembly by Acts 1965, ch.

138, as found in Burns' Ind. Stat. Anno. (1965 Repl.), § 39-4310, provided:

"No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14 [§ 47-1057], as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; Provided, That the named insured shall have the right to reject such coverage (in writing) and Provided further, That unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer. [Acts 1965, ch. 138, § 1, p. 215.]"

The provisions of the above statute must be considered a part of every automobile liability policy the same as if written specifically therein. *Bonfils* v. *Pacific Auto. Ins. Co.*, 165 Cal. App. 2d 152, 331 P. 2d 766 (1958) ; *Page* v. *Insurance Co. of North America*, 256 Cal. App. 2d 374, 64 Cal. Rptr. 89 (1967). Even where the policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law. *Voris* v. *Pacific Indem. Co.*, 213 Cal. App. 2d 29, 28 Cal. Rptr. 328 (1963). See also *Eliopulos* v. *North River Ins. Co.*, 219 Cal. App. 2d 845, 33 Cal. Rptr. 449 (1963).

Where the provisions of a policy regarding uninsured motorist coverage are more restrictive than the relevant statutory provisions requiring the same, the requirements of the statute will prevail. *Ampy* v. *Metropolitan Casualty Ins. Co.*, 200 Va. 396, 105 S. E. 2d 839 (1958). See

also *Phoenix Ins. Co.* v. *Kincaid,* Fla. App., 199 So. 2d 770 (1967) ; *Stephens* v. *Allied Ins. Co.,* 182 Neb. 562, 156 N. W. 2d 133, 26 A. L. R. 3d 873 (1968).

The legislative purpose in the enactment of statutes providing for uninsured motorist endorsement should be interpreted in the light that such endorsement is designed to protect the insured, and any operator of the insured's automobile with insured's consent, against any injury caused by negligence of uninsured or unknown motorists. *Buck* v. *U.S. F. & G.,* 144 S. E. 2d 34, 265 N. C. 285 (1965).

Purpose and object of uninsured motorist coverage must be considered in the statutory framework of minimum coverages required by law. *Carrignan* v. *Allstate Ins. Co.,* 108 N. H. 131, 229 A. 2d 179 (1967).

Uninsured motorist legislation is remedial in nature and should be liberally construed. *Guthrie* v. *State Farm Mut. Auto. Ins. Co.,* 279 F. Supp. 837 (D.C. 1968) ; *Katz* v. *American Motorist Ins. Co.,* 53 Cal. Rptr. 669, 224 Cal. App. 2d 886 (1966) ; *Stevens* v. *American Service Mut. Ins. Co.,* D.C. App. 1967, 234 A. 2d 305; *Bendelow* v. *Travelers Indem. Co.,* 293 N. Y. S. 2d 629, 57 Misc. 2d 237 (1968) ; *Moore* v. *Hartford Fire Ins. Co. Group,* 270 N. C. 532, 155 S. E. 2d 128 (1967) ; *Harleysville Mut. Cas. Co.* v. *Blumbling,* 429 Pa. 389, 241 A. 2d 112 (1968) ; *Gunnels* v. *American Liberty Ins. Co.,* 161 S. E. 2d 822, 251 S. C. 242 (1968), *McDaniel* v. *State Farm Mut. Auto. Ins. Co.,* 205 Va. 815, 139 S. E. 2d 806 (1965) ; *State Farm Mutual Auto. Ins. Co.* v. *Automobile Underwriters,* 371 F. 2d 999 (7th Cir. 1967) ; *Arnold* v. *State Farm Mutual Auto. Ins. Co.,* 260 F. 2d 161 (7th Cir. 1958) ; *Wright* v. *Fidelity and Casualty Co. of N.Y.,* 270 N. C. 577, 155 S. E. 2d 100 (1967) ; *McCaffery* v. *St. Paul Fire and Maine Ins. Co.,* 108 N. H. 373, 236 A. 2d 490 (1967) ; *Nationwide Mut. Ins. Co.* v. *Sours,* 205 Va. 602, 139 S. E. 2d 51 (1964) ; *Andeen* v. *County Mut. Ins. Co.,* 70 Ill. App. 2d 357, 217 N. E. 2d 814, cert. den., 385 U. S. 1036, 17 L. Ed. 682, 87 S. Ct.

775, reh. den., 386 U. S. 939, 17 L. Ed. 2d 812, 87 S. Ct. 953. See also 7 Appleman, *Insurance Law and Practice*, § 4331.

An attempt by the insurer to dilute or diminish uninsured motorist statute protection is contrary to public policy. *Prosk* v. *Allstate Ins. Co.*, 82 Ill. App. 2d 457, 226 N. E. 2d 498, 25 A. L. R. 3rd 1294 (1967).

An uninsured motorist endorsement that contravenes the requirement of the statute is, to that extent, invalid regardless of the insurance department's approval of it. *Davidson* v. *Eastern Fire & Casualty Ins. Co.*, 245 S. C. 472, 141 S. E. 2d 135 (1965).

Following this enactment by the General Assembly in 1965 the insurance industry in Indiana developed certain standard coverages which pertain to uninsured motorists. The coverages which are relevant to this case are set forth in the complaint, *supra*.

In the trial court and in this court the arguments of the parties centered around the validity and interpretation of the so-called uninsured motorist's coverage as above set forth. The appellee cites and relies heavily upon the decision of Judge Beamer in *Lerma* v. *Allstate Ins. Co.*, 301 F. Supp. 361 (N.D. Ind. 1968), which stated in part:

> The final principle enunciated by the courts of this state which bears upon this question is that a common law submission of a present dispute to arbitration may be revoked at any time prior to an award, but once an award has been made, the parties are bound thereby. *Grand Rapids & I. Ry. Co.* v. *Jaqua* (1917), 66 Ind. App. 113, 115 N. E. 73; *Heritage* v. *State* (1909), 43 Ind. App. 595, 88 N. E .114. Against this legal background, the defendant could have the court find that, where the contract provided, submission of a dispute to arbitration is a condition precedent to suit on the contract, even though the arbitration award would not be binding upon the parties. This presents two possibilities. Either the plaintiff would submit the case to arbitration but revoke the submission before an award for fear that the award would be binding under the cases just cited, or he would await the award and then attempt to maintain a suit on the contract. In either case the unwilling plaintiff would

be forced to do a useless act which would add to the cost, delay and frustration of litigation. It is an axiom of the law that the court will not require a useless act, and none would be more useless than unbinding arbitration between unwilling parties.

"Furthermore, the issues to be submitted to arbitration under this type of insurance contract encompass far more than the amount of damages to be covered. By its terms, the arbitration clause would require the parties to submit legal issues of liability on the contract to persons other than a court of competent jurisdiction. Even in those cases where the Appellate Courts have upheld arbitration, it has been directed solely to the amount of damages to be recovered. The futility of toothless arbitration is only heightened by broadening the issues to be determined. The court finds that under Indiana law, a contractual provision such as this, requiring future disputes to be submitted to arbitration which is not and cannot be binding, is of no effect.

"The court recognized that the legislature of this state has provided for a statutory submission of present disputes to arbitration. Burns' Indiana Statutes, § 3-201, et seq. This statute has been effective for some time and has not been construed as creating any public policy in favor of arbitration. The court also recognizes that other jurisdictions have upheld arbitration clauses such as this. *Miller* v. *Allstate Insurance Company*, 238 F. Supp. 565 (W.D. Pa. 1965); *Norton* v. *Allstate Insurance Company*, 226 F. Supp. 373 (E.D. Mich. 1964). The cases cited dealt with Pennsylvania and Michigan law respectively. Michigan has a statute, set out in the case, that validates arbitration in insurance contracts. Unfortunately, no such statute exists in Indiana, and this court is bound to follow Indiana law.

"The court, therefore, finds that the arbitration clause in question is not binding upon the parties and that arbitration is not a condition precedent to maintenance of this lawsuit."

We believe that the reasoning and result which Judge Beamer reached in *Lerma* is substantiated by a well recognized body of case law. In at least thirteen states the common law has been modified only insofar as to sanction agreements to arbitrate present disputes. Indiana is clearly one of those states as reflected in Burns' Ind. Stat. Anno., § 3-201. In jurisdictions such as Indiana, at the time of this dispute, the validity of agreements to arbitrate future

disputes has generally been held invalid. Therefore, under the law of Indiana as it applies to this case, the uninsured motorist's coverage in question is an agreement to arbitrate a future dispute and is therefore invalid. This result was generally contemplated early in the development of uninsured motorist's coverage. In the 1960 proceedings of the American Bar Association, Section of Insurance, Negligence and Compensation Law, in an article entitled "Recovery Procedure Under Uninsured Motorist", at page 285 it is stated:

> "The administration of law by arbitration is very popular but it is to be noted that in some jurisdictions arbitration procedure is not in harmony with the law of the place where the coverage might be executed. An arbitration agreement cannot restrict one of the parties from enforcing his rights by the usual legal proceedings in an ordinary tribunal. In Oklahoma, Arkansas and Illinois, and I am sure in other states, agreements to arbitrate future disputes are void and against public policy."

In *Boughton* v. *Farmers Insurance Exchange*, Okla., 354 P. 2d 1085, 79 A. L. R. 2d 1245 (1960), the Supreme Court of Oklahoma which, like Indiana, did not recognize arbitration of future disputes, stated:

> "In the instant case the insured made known to the insurer that she would not submit the issues to arbitration and she in no way participated in any arbitration proceedings. The arbitration provision provided a means whereby the insured and insurer would settle all future controversies as no controversies existed when the policy of insurance was issued. The arbitration provision deprived the insured of a judicial examination and determination of the issues involved and under the authority of Wilson v. Gregg, supra, we hold such provision is contrary to public policy and unenforceable and the trial court did not err in so holding.
> "Since the arbitration provision was unenforceable, what effect if any, did the 'no action' provision have upon the rights and obligations of the insured and insurer. In this connection, Exchange, the insurer, contends no action can lie against it unless there has been full compliance with the terms of the policy, and since insured refused to submit to arbitration she did not comply with the terms.
> \* \* \*

"We cannot sustain Exchange's contention that if the arbitration provision is unenforceable or the 'no action' clause is void, all parts of the insuring agreement dealing with uninsured motorists' coverage are void. The insured paid consideration for the insurance whereby she was protected against uninsured motorists. The primary and essential part of the contract was insurance coverage, not the procedure for determining liability. Exchange prepared the policy and is charged with knowledge that stipulations to arbitrate future controversies are unenforceable and contracts restricting a party thereto from enforcing his rights by the usual legal proceedings in the ordinary tribunals are void. If insurer imposed provisions in the policy which were unenforceable and void it cannot deny liability under the insuring agreement because of the unenforceable and void provisions. Such provisions cannot invalidate or hold for naught a liability which the insurer agreed by contract to assume. A contrary rule would, in effect, be giving legal force to provisions which are unenforceable and void. We therefore hold the insuring agreement dealing with uninsured motorists' coverage is not void.

"Having determined the arbitration provision to be unenforceable and the 'no action' clause void, we must now determine if Exchange can relitigate the question of liability of the uninsured motorist and the amount of damages sustained by plaintiff. In this connection, plaintiff contends these issues can not be relitigated as the judgment against the uninsured motorist determined these issues. On the other hand, Exchange contends that even though such judgment determined the liability of the uninsured motorist and established the damages insured was entitled to recover from the uninsured motorist, such judgment is not binding on it as it was not a party to that action and such issues must be relitigated to determine Exchange's liability.

"Exchange was not a party to the action against the uninsured motorist and it is apparent the judgment rendered therein is not binding upon Exchange in a sense that is a judgment against Exchange. However, this action is not for the collection of that judgment, but an action to recover under the terms of the policy which provides the insurer agrees 'to pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile.'

"Exchange became liable under the terms of the policy to pay all sums which the insured shall be legally entitled to recover; Exchange had notice of the pendency of that

action and knowledge that that action was instituted for the determination of the legal liability of the uninsured motorist and the amount of damages insured was legally entitled to recover; it was furnished with a copy of the petition and a copy of the summons; it was urged to participate either in the prosecution or defense of that action, and to do whatever is felt necessary; it was notified that it would be liable under the terms of the policy for such adjudication.

"Instead of protecting its rights in that action, Exchange chose to rely on the arbitration provision and the 'no action' clause in the policy. We held the arbitration provision to be unenforceable and the 'no action' clause to be void. Therefore, should Exchange be permitted to retry and relitigate the question of damages and liability of the uninsured motorist when it agreed to pay all sums insured shall be legally entitled to recover, where such questions were litigated and determined in a previous action which Exchange had notice of and an opportunity to defend?

\* \* \*

"Exchange agreed to pay all sums plaintiff was legally entitled to recover as damages. The judgment against the uninsured motorist determined that plaintiff was entitled to recover from an uninsured motorist and established the amount she was entitled to recover. Exchange cannot now say, under the facts of this case, that it is entitled to relitigate these issues when it agreed to pay that which has already been determined. We, therefore conclude the question of damages and legal liability of the uninsured motorist may not be relitigated in the present action and that the judgment against the uninsured motorist is conclusive of the issues therein determined, subject however, to any defenses Exchange may have against it."

It should be noted that the language "to pay all sums which the insured shall be legally entitled to recover" is identical in *Boughton* and this case.

A like result was reached in *Hill* v. *Seaboard Fire & Marine Ins. Co.*, Mo. App., 374 S. W. 2d 606 (1963) ; *Barnhart* v. *Civil Service Employees Ins. Co.*, 16 Utah 2d 223, 398 Pac. 2d 873 (1965) ; *American Southern Ins. Co.* v. *Daniel*, Fla. App., 198 So. 2d 850 (1967) ; *State Farm Mutual Automobile Ins. Co.* v. *Craig*, Mo. App., 364 S. W. 2d 343 (1963) ; *Spillman* v. *U.S.*

*F. & G.,* La. App., 179 So. 2d 454 (1965) ; *Dominici* v. *State Farm Mutual Ins. Co.,* 143 Mont. 406, 390 Pac. 2d 806 (1964) ; *Levy* v. *American Automobile Ins. Co.,* 31 Ill. App. 2d 157, 175 N. E. 2d 607 (1967) ; (The result in *Levy* was later changed by the enactment of a new arbitration statute in Illinois) ; *Childs* v. *Allstate Ins. Co.,* 237 S. C. 455, 117 S. E. 2d 867 (1961) ; *Heisner* v. *Jones,* 184 Neb. 602, 169 N. W. 2d 606 (1969) ; *Ellison* v. *Safeguard Mut. Ins. Co.,* 209 Pa. Super. 492, 229 A. 2d 482 (1967) ; *Donahue* v. *Associated Indem. Corp.,* 101 R. I. 741, 227 A. 2d 187 (1967) ; and *MaCaluso* v. *Watson,* La. App., 171 So. 2d 755 (1965).

This is a basic inter-relationship and inter-dependence between the arbitration provisions of the uninsured motorist's coverage here involved and the related section regarding judgment obtained against the uninsured motorist without the written consent of the appellant insurance company. This inter-relationship is clearly reflected in a recent decision by the Supreme Court of Nebraska in *Heisner* v. *Jones,* 184 Neb. 602, 169 N. W. 2d 606 (1969), in which the court stated:

> "We, therefore, come to the conclusion that the compulsory arbitration clause involved in this insurance policy and considered in the context of an uninsured motorist's coverage is void and of no force and effect because it contravenes public policy expressed in German-American Ins. Co. v. Etherton, supra, in that it operates 'to oust the courts of their legitimate jurisdiction.' The problem then becomes: Does the insurer, Protective, have an available and adequate remedy to settle the issues of liability and damages giving rise to its contractual duty? We note here also as significant the contractual provision in which Protective becomes subrogated to the insured's right against the tort-feasor. Its coverage is limited and the insured's right of action may be a very valuable one both to recover damages in excess of the coverage and as a means of enforcing the contractual subrogation obligation of the insured. It, therefore, appears that if the clause in the policy requiring consent by the insurer before it becomes bound in an action between the insured and the uninsured motorist is valid, the insured, absent consent, would be compelled to bring two lawsuits to properly protect his rights. The insured would be required

to sue the uninsured motorist to obtain a judgment which may be in excess of the limits on the uninsured motorist's coverage he possesses. This lawsuit, not complying with the consent provision, would necessitate a second suit against the insurer to litigate the issues of liability and damages due from the insurer under the uninsured motorist's clause. Such a multiplicity and confusion of issues and the attendant expense should be avoided if possible. There is no issue in this case with reference to notice or the overreaching of Protctive. The evidence shows that at all times Protective had full notice of the actions of the insured, of the suit against the tort-feasor, and that it deliberately took the position that it now takes in this case. The issue then is whether the 'consent to be bound' provision is valid between the insured and Protective.

"It seems to us apparent that, although separately printed and stated in the policy, the consent to be bound provision and the arbitration clause provision are mutually complementary and mutually reciprocal, and inducive to each other, and therefore must be stricken as a part of an arbitration scheme which is void as against public policy.

"We hold that the uninsured motorist carrier, Protective, is fully protected as to all of its rights by permitting it to intervene in the litigation, as was present here, between the insured and the tort-feasor. * * * It is apparent that the questions litigated and the action between the insured and the uninsured tort-feasor, for liability and damages, are the identical issues which determine liability of Protective under the insurance policy and which give rise to Protective's contractual duty to pay the insured. Protective has a direct interest in the matter of litigation within the meaning of our intervention statute.

"Other courts faced with this same situation have come to the same conclusion. In State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig, (Mo. App.), 364 S. W. 2d 343, 95 A. L. R. 2d 1321, intervention was permitted by the insurer in an action by its insured against an uninsured motorist. The court found that State Farm would be bound by the judgment on the issues of liability and damages giving rise to its contractual duty to pay sums which the insured is legally entitled to recover, and therefore concluded that the insurer may be bound by a judgment in the action within the meaning of Missouri's intervention statute.

"In Dominici v. State Farm Mutual Automobile Ins. Co., 143 Mont. 406, 390 P. 2d 806, the Supreme Court of Montana struck down both an arbitration clause and a 'consent

to be bound' clause and suggested that intervention would protect the insurer against being required to pay under its contract based upon a judgment where liability and damages were not adequately litigated. The court said: 'We must admit that this, or any other, insurance carrier is thrown upon the horns of a dilemma by this interpretation of this type of insurance contract. However, this harshness may be ameliorated through the use of intervention (See State of Missouri ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, Mo. App., 364 S. W. 2d 343), or possibly a plaintiff's use of joinder. This court appreciates the problems involved in such insurance coverage and the benefits to be derived by society in general. But we cannot countenance unreasonable obstructions which restrict the use of the courts to be placed in the path of a just recovery. So long as proper and timely notice is given an insurance carrier so their rights are not prejudiced we do not feel that they are being imposed upon.'

*"We therefore hold that an uninsured motorist's carrier may intervene in an action between its insured and the uninsured tort-feasor in order to protect itself on the issues of liability and damages arising under the uninsured motorist's provisions of its insurance policy.* It is further clear that our holding herein is conditioned upon and rests upon the compliance by the insured with the fundamentals of procedural due process. The carrier would not be bound unless given full notice and adequate opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor. To give the uninsured motorist's carrier the right to intervene is to give assurance that it may litigate the issues and at the same time avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice. The terms of his contract and the uninsured motorist's statutes imply that they need to be litigated only once. We have recently held in Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N. E. 2d 133, that the proper interpretation of our statutes on uninsured motorist's liabilities is that the uninsured motorist clause is a substitute liability policy. It is true that this may place the carrier in an inconvenient position with respect to the issues of negligence and contributory negligence. We see no difference between this situation and the common situation where the carrier has coverage on two insureds involved in the same accident. Beyond that the carrier receives a separate premium for a policy which on its face requires it to be placed in an am-

bivalent or inconsistent position and it therefore calculatedly assumes the inconveniences that may arise from that situation. In any event, balancing these considerations, the inconvenience of the insurer must give way to the overriding public policy expressed in our statute protecting an insured against the danger of the uninsured motorist.

"The insurer is bound by the law of the State of Nebraska and the applicable statutes. It was well aware that its arbitration clause was unenforceable and it is apparent that its 'consent to be bound' clause was an integral and inducing provision to enforce the requirement of arbitration. It had full notice and an opportunity to intervene but instead chose to rely upon and to test a procedure dictated in its insurance policy provisions which would oust the courts of their jurisdiction and subject their own insured to the harassment and confusion of a multiplicity of suits which is contrary to the basic public policy of the state requiring the insurer to the extent of the coverage required to provide a substitute liability policy for the uninsured motorist tort-feasor." (Emphasis supplied)

The only definitive treatise on uninsured motorists was published in 1969 by Professor Alan I. Widiss titled *A Guide to Uninsured Motorist Coverage*. In regard to the consent to sue clause Professor Widiss states at page 258:

"When the enforceability of the permission to sue clause was questioned, many courts upheld it, generally on the ground that the endorsement sets out this provision in clear and unambiguous language. However, at least one court has decided that the claimant was not barred from recovering under the endorsement if he could show that the breach was not prejudicial to the insurance company. And still other decisions concluded that this clause is void or unenforceable, based on one or more of the following rationales:

(1) that it is generally against public policy for the insurance company to restrict the insured's right to trial by jury of the action against a negligent motorist; or

(2) that since the insured may be able to collect directly from the negligent motorist (without recourse to the insurance company), he ought to be permitted to make the attempt; or

(3) that since the agreement to arbitrate is enforceable, the insured should be entitled to a determination of

the issues of fault and damages in a suit against the uninsured motorist.

In general the opinions in the foregoing cases seem to reflect the idea that the insured should not be prevented or discouraged from attempting to recover directly from the uninsured motorist, and that he should not be penalized for his efforts so long as the position of the insurance company is not prejudiced by his attempt.

"The courts which have invalidated the permission to sue clause have done so in jurisdictions where the arbitration clause is unenforceable. * * *."

On the basis of the reasoning and authorities in *Heisner* v. *Jones, supra,* as substantiated by Professor Widiss, we believe that the consent to sue provision must fall with the arbitration clause because of their fundamental interdependency.

If the arbitration clause in the uninsured motorist coverage is invalid as we have here determined, then the insured, Appellee here, obviously must have the right to pursue her claim against the Appellant Insurance Company if no settlement of the claim is possible. The real question relates to what course of action the insured-claimant must pursue against the Insurance Company. In several cases insurance companies have argued that the insured-claimant must secure a determination of the issues of fault and damages by suing the uninsured motorist before bringing an action against the insurance company under the uninsured motorist's coverage. This approach has been rejected in the following cases: *Hickey* v. *Insurance Co. of N.A.,* 239 F. Supp. 109 (E.D. Tenn. 1965) ; *Wortman* v. *Safeco Ins. Co.,* 227 F. Supp. 468 (E.D. Ark. 1963) ; *Hill* v. *Seaboard Fire and Marine Cas. Ins. Co.,* Mo. App., 374 S. W. 2d 606 (1963) ; *State ex rel. State Farm Mut. Auto. Ins. Co.* v. *Craig,* Mo. App., 364 S. W. 2d 343 (1963) ; *Application of Travelers Indem. Co.,* 226 N. Y. Supp. 2d 16 (1960) ; *Wright* v. *Fid and Cas. Co. of N.Y.,* 270 N. C. 577, 155 S. E. 2d 100 (1967) ; *Barnhart* v. *Civil Service Employees Ins. Co.,* 16 Utah 2d 223, 398 P. 2d 873 (1965).

Under the relevant case law the insured-claimant who has a claim against an uninsured motorist has the following options open to him:

1. He may file an action directly against his insurance company without joining the uninsured motorist as a party defendant and litigate all of the issues of liability and damages in that one action. *Wortman* v. *Safeco Ins. Co., supra; Hill* v. *Seaboard Fire and Marine Ins. Co., supra; Boughton* v. *Farmers Ins. Exchange, supra; Travelers Indemnity Co.* v. *Debose,* 226 N. Y. S. 2d 16 (1960) ; and *State Farm Mutual Auto. Ins. Co.* v. *Matlock,* Tex. Civ. App., 446 S. W. 2d 81 (1969). See also *Lawrence* v. *Continental Ins. Co.,* La. App., 199 So. 2d 398 (1967).

2. He may file an action joining both the uninsured motorist and the insurance company as party defendants and litigate all of the issues of liability and damages in that action. See *American Fid. Fire Ins. Co.* v. *Hartford Accident and Indem. Co.,* S. C., 163 S. E. 2d 926 (1968), and Widiss page 273. See also, *Hill* v. *Seaboard Fire and Marine Ins. Co., supra.*

3. He may file an action against the uninsured motorist alone without joining the insurance company as a party defendant and litigate the issues of liability and damages. In such case he gives preliminary and adequate notice of the filing and pendency of such action to the insurance company so that they make take appropriate action including intervention.

4. He may file an action against the uninsured motorist and give no notice to the insurance company.

There can be no question that under options one and two the insurance company is bound by the determination of the issues of liability and damages after all appellate remedies are exhausted. The question, therefore, in this case is whether or not the insurance company is bound by the

determination of liability and damages in the situation generally described in option three. There can be no question that the insurance company is not bound by the results in option four.

The insurance company had a right to intervene in the case brought by the insured against the uninsured motorist. *Wert* v. *Burke,* 47 Ill. App. 2d 453, 197 N. E. 2d 717 (1964) ; *State ex rel. State Farm Mut. Ins. Co.* v. *Craig, supra; Dominici* v. *State Farm Mut. Auto. Ins. Co.,* 143 Mont. 406, 390 P. 2d 806 (1964) ; *Alston* v. *Amalgamated Mut. Cas. Co.,* 53 Misc. 2d 390, 278 N. Y. S. 2d 906 (1967) ; *Lamb* v. *Horwich,* 48 Ill. App. 2d 251, 198 N. E. 2d 194 (1964) ; *Matthews* v. *Allstate Ins. Co.,* 194 F. Supp. 459 (E.D. Va. 1961) ; *State Farm Mut. Auto. Ins. Co.* v. *Jiles,* 115 Ga. App. 193, 154 S. E. 2d 286 (1967) ; *State Farm Mut. Auto Ins. Co.* v. *Glover,* 113 Ga. App. 815, 149 S. E. 2d 852 (1966) ; *Heisner* v. *Jones,* 184 Neb. 602, 169 N. W. 2d 606 (1969) ; *Boughton* v. *Farmers Ins. Exchange, supra.* See also cases collected in 95 A. L. R. 2d 1330. I believe the above cases state the desirable rule. For summation of contra authority, see *Allstate Ins. Co.* v. *Hunt,* Tex. App., 450 S. W. 2d 668 (1970).

The insurance company was fully advised in detail as to the filing and pendency of the lawsuit by the insured against the uninsured motorist. The insurance company chose to ignore the litigation although the insurance company was certainly no stranger to the dispute. In this regard Professor Widiss at page 268 of *A Guide to Uninsured Motorist Coverage* states:

> "In the event the insured elects to bring an action against the uninsured motorist, many jurisdictions will allow the insurance company which has issued uninsured motorist coverage to intervene for the purpose of presenting defenses on behalf of the uninsured motorist or joining in the defense. Depending on jurisdiction, such intervention may be a matter of right or may depend on permission of the court.
>
> If the insurance company intervenes as a defendant in the insured's action against the uninsured motorist, by necessity the issues of (1) whether the insured is legally entitled to recover from the uninsured motorist and (2) the amount of

such recovery will definitely be resolved as between the insured and the company (as well as between the insured and the uninsured motorist). Therefore, in all probability nothing is left for a subsequent arbitration or litigation.

\* \* \*

It seems reasonable to predict that most courts will not give effect to the clause that no judgment against any person or organization will be conclusive as between the company and the insured, especially if the insurer has intervened. While either the claimant or the insurer might argue that in some jurisdictions technically the judgment in such a case is still between the insured and the uninsured, it seems likely that most courts would look through such an argument."

As is well pointed out in the *Heisner* case there are very good reasons to avoid an attempt to fit the facts of this case neatly in the classical molds of res judicata as set forth in *Mayhew* v. *Deister,* 144 Ind. App. 111, 244 N. E. 2d 448 (1969). Given the insurance company's right to intervene and its failure and refusal to do so, and given its obvious knowledge of and interest in the case against the uninsured motorist, there is no good reason to put the burden on the insured to relitigate the same issues in a second suit against the insurance company. It is sound legal policy to avoid multiplicity of suits and resolve disputes in one case where possible.

Our decision here is bolstered by the reasoning and result by the Supreme Court of Nevada in *Allstate Insurance Co.* v. *Pietrosh,* 454 P. 2d 106 (1969) at page 108:

\* \* \*

"An insured who is legally entitled to recover damages from the owner or operator of an uninsured vehicle would seem to have several options available to secure such relief. He may settle his claim with his insurance company; settle with the uninsured motorist; arbitrate with his insurance company; sue his insurance company; sue the uninsured motorist; or sue both, joining them as codefendants. These options, however, are not always open, and whatever course is selected by the insured may engender problems since other policy provisions and state law sometimes provide barriers. For example, settlement with his insurance company may involve that company's right of subrogation should the in-

sured thereafter proceed against the uninsured motorist. Settlement with the uninsured motorist may require the consent of the insurance company. Arbitration may not be available because of state law. Litigation against the uninsured motorist may be precluded unless consent of the insurance company is obtained. Suit against the uninsured motorist and the insurance company as codefendants may raise problems of joinder and conflicting interests.

\* \* \*

The policy before us provides for arbitration in the event of disagreement and upon written demand of either insured or insurer. Since neither demanded arbitration the enforceability of that provision is significant only to the extent that it bears upon the 'consent' endorsement—a matter to which we now turn our attention.

At trial a factual dispute arose as to which of two amendatory 'consent' endorsements to the original policy of insurance was applicable at the time of the accident. The district court did not resolve that dispute. Allstate contended that the 'permission to sue' clause was in effect. This was an exclusion from coverage provision stating: 'This section of the policy does not apply to bodily injury of an insured with respect to which such insured or his representative shall, without the written consent of Allstate, make any settlement with, or prosecute to judgment any action against, any person or organization who may be legally liable therefor; \* \* \* \*.

The insureds urged that a revised endorsement was in force which provided that 'no judgment against any person or organization alledged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by an action prosecuted by an insured with the written consent of the company.' This endorsement, if applicable, would have appeared in the coverage section of the policy.

The first mentioned endorsement was designed to defeat coverage should the insured prosecute an action to judgment against the uninsured motorist without the consent of Allstate. Under the revised endorsement a prosecution to judgment is not treated as an event that will defeat coverage. Its purpose is to preclude the binding effect of such judgment upon the insurance company.

Since the district court failed to decide which of the two endorsements was in effect, we shall consider each of them.

The permission to sue endorsement. Some courts have ruled that the permission to sue clause is void, if the arbitration clause is not enforceable. Boughton v. Farmers Ins. Exchange, 354 P. 2d 1085, 79 A. L. R. 2d 1245 (Okl. 1960); Dominici v. State Farm Mutual Auto Ins. Co., 143 Mont. 406, 390 P. 2d 806 (1964); State ex rel. State Farm Mut. Auto. Inc. Co. v. Craig, 364 S. W. 2d 343, 95 A. L. R. 2d 1321 (Mo. App. 1963). The reasoning is that if arbitration is not available the insured should be entitled to a court determination of fault and damage in a suit against the uninsured motorist; or that it is against public policy to preclude the insured's right to trial by jury of his claim against the uninsured motorist. These cases are not particularly persuasive since we have decided that a pre-1967 provision for arbitration is enforceable in this state.

The permission to sue endorsement was litigated in two Illinois cases, Levy v. American Auto Ins. Co., 31 Ill. App. 2d 157, 175 N. E. 2d 607 (1961), and Andeen v. Country Mutual Ins. Co., 70 Ill. App. 2d 357, 217 N. E. 2d 814 (1966). The Levy case was decided before Illinois adopted a statute approving agreements to arbitrate future disputes. The Andeen decision was handed down after the enactment of that statute. In each instance the exclusion was held not to bar an action when the insurance company furnished no reason for its refusal to allow the insured to obtain a judgment against the uninsured motorist. In Levy, the court wrote: '* * * * the condition of the company's promise to pay is the ascertainment of the legal liability of the third party. The company can prevent this determination by the simple devise of refusing to grant the insured its written consent to prosecute the action to judgment. There was an implied promise on the part of the Insurance Company that it would not unreasonably or arbitrarily withhold its written consent. The company gave no reason for its refusal to allow the plaintiffs to obtain a judgment against the uninsured motorist.' 175 N. E. 2d at 611. And in Andeen, where the insurance company was notified of the filing of suit against the uninsured motorist, and did nothing, the court approved the lower court's remark that the insurance company should have consented to suit or demanded arbitration. Failing to do either, it was bound by the judgment.

Those decisions are on point. Although informed of the accident shortly after it happened, Allstate apparently did nothing. The record does not disclose an attempt to settle

the insureds' claim. When notified of the litigation, no move was made to intervene therein (cf. State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig, 364 S. W. 2d 343, 95 A. L. R. 2d 1321 (Mo. App. 1963), demand arbitration, or consent to the suit. This, we think, was unreasonable conduct on its part which we cannot condone.

An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not. Prudential Insurance Co. v. Lamme, 83 Nev. 146, 148, 149, 425 P. 2d 346 (1967). For this reason we do not hesitate to place the burden of affirmative action upon the insurance company. When notified of a claim it should investigate with reasonable dispatch; demand arbitration if that is its desire and settlement can't be reached; consent to suit against the uninsured motorist when notified of its pendency; or seek leave to intervene and present its contentions. Multiple litigation is not desirable. In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy. We hold that the permission to sue endorsement, if in effect at the time of the accident, does not bar recovery in the circumstances of this case.

The revised endorsement. The aim of this endorsement is to preclude the binding effect of a judgment against the uninsured motorist upon the insurance company. The notion is that although the insured may litigate against the uninsured motorist without the insurance company's permission, any judgment secured will not obviate the necessity for him to arbitrate with or sue his company in order to collect under the policy. The provision is reasonable when the insurance company is not notified of the litigation and is, therefore, without compulsion to intervene, demand arbitration, or take other steps. Its enforcement may be appropriate in a case where the insured secures a default judgment against the uninsured motorist, since an adversary determination of liability and damages is absent. MFA Mutual Ins. Co. v. Bradshaw, 431 S. W. 2d 252 (Ark. 1968). However, where the company is given notice of the action, has the opportunity to intervene, and judgment is thereafter obtained against the uninsured motorist in an adversary proceeding, we hold that the company should be bound thereby despite the contrary policy provision.

We recognize that our holding on this point subverts the requirement of privity normally present with an application

of the doctrines of res judicata or collateral estoppel. Privity is absent here. Our holding also forces intervention. However, the avoidance of multiple litigation carries the greater weight. We therefore conclude that the revised endorsement, if in effect at the time of the accident, does not preclude the judgment entered below."

*Allstate Ins. Co.* v. *Pietrosh, supra,* is more persuasive simply because its jurisdiction recognizes arbitration of future disputes, which Indiana did not at the time of this case.

In this case since the insurance company was fully advised as to the filing and pendency of the suit against the uninsured motorist and chose to take no action at all, we hold that in the absence of any showing of fraud, misrepresentation or collusion that the judgment against the uninsured motorist is binding upon the insurance company. See *Boughton* v. *Farmers Ins. Exch., Levy, Childs, Dominici* v. *State Farm, Allstate Ins. Co.* v. *Pietrosh.*

The record is clear and undisputed in this case that neither the Appellant insurance company or the Appellee insured *at any time* made an explicit demand for arbitration. Even if the arbitration clause were valid there is a wealth of case law that holds that such constitutes a waiver of arbitration. See 7 Am. Jur. 2d, *Automobile Ins.,* § 139, p. 466; *American Southern Ins. Co.* v. *Daniel,* Fla. App., 198 So. 2d 850 (1967); *Paroy* v. *Royal Globe Ins. Co.,* 217 A. 2d 916, 90 N. J. Sup. 454 (1966); *Allstate Ins. Co.* v. *Pietrosh, supra; U.S.F. & G.* v. *Williams,* Fla. App., 177 So. 2d 47 (1965); *Schramm* v. *Cotz,* 23 Wisc. 2d 678, 127 N. W. 2d 779 (1964); *McCarthy* v. *M.V.A.I.C., supra.* (In the latter case the court held that where neither party served a demand for arbitration, the same was deemed waived).

The record in this case discloses a dispute over the applicable rules of law and no genuine issue as to any material fact is presented. This case is basically in the same posture as *Heeter* v. *The Western Boone County Community School Corp.,* 147 Ind. App. 153, 259 N. E. 2d 99 (1970); *Western*

*Casualty and Surety Co.* v. *State,* 146 Ind. App. 431, 256 N. E. 2d 398 (1970) ; *Cassidy* v. *Cain,* 145 Ind. App. 581, 251 N. E. 2d 852 (1969) ; *Humphrey* v. *Commonwealth Life Ins. Co.,* 145 Ind. App. 341, 251 N. E. 2d 45 (1969) ; *Schill* v. *Choate,* 144 Ind. App. 543, 247 N. E. 2d 688 (1969) ; *Security Credit Acceptance Corp.* v. *State of Indiana,* 144 Ind. App. 558, 247 N. E. 2d 825 (1969) ; *Pan American World Airlines* v. *Local Readers Service,* 143 Ind. App. 370, 240 N. E. 2d 552 (1968) ; and *Wagoner* v. *Wagoner,* 147 Ind. App. 696, 263 N. E. 2d 657, (11-19-70).

In regard to the legal issues we believe the trial court reached the correct conclusion, as a matter of law, and that the granting of summary judgment should be affirmed.

Hoffman, P.J. and Pfaff, J., concur; White, J., dissents with opinion.

## DISSENTING OPINION

WHITE, J.—Appellee, Shirley Jordan Noble (hereinafter the "insured"), brought suit in the court below against her own automobile insurance company, Appellant Indiana Insurance Company (hereinafter the "insurer" or the "company") to recover under the "uninsured motorist coverage"[1] of her policy.

---

1. The terms, uninsured motorist coverage and family protection insurance have been used interchangeably by the industry to identify this coverage, and have been accorded general acceptance as the appropriate nomenclature. However, individual insurance companies are free to choose that terminology which they deem desirable. Thus, the endorsement has received numerous other designations, such as 'innocent victim coverage' and 'family protection against uninsured motorists.' Note 35, p. 15, Widiss, *A Guide to Uninsured Motorist Coverage* (The W. H. Anderson Co., Cinn., 1969).

The policy at bar is as labeled "Family Automobile Policy", Part IV of which is captioned "Family Protection Coverage", the basic portions of which read as follows:

"Coverage U—Family Protection Damages for (Bodily Injury). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages,

Her motion for summary judgment was granted. Judgment in the sum of $9,552.17[2] was entered against the insurer and in favor of the uninsured on account of personal injuries allegedly sustained by her in a collision of her insured automobile and an uninsured automobile. In granting the insured's motion for summary judgment, the trial court treated a $20,000.00 judgment, entered in the insured's previous suit against the uninsured motorist, as having conclusively established for the present suit, that the insured was "legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the . . . use of such uninsured automobile . . ." in the sum of $20,000.00. However phrased, the controlling question in this appeal is whether the trial court erred in so treating that prior judgment. One is tempted to state the question abstractly, but to do so is to court error. Any abstract question, short enough to be useful, would ignore the state-to-state and time-to-time difference in statutes and policy provisions which are so important. Failure to recognize such distinctions has already produced (or contributed to) much error in this rapidly developing field. This opinion, therefore, will attempt to answer only the questions presented by this case on the basis of this cause's policy and the statute of this state in force at the time this policy was written and this controversy was litigated.

The parties have argued the question on the basis of an implied assumption that the answer depends on whether the following policy provision is valid:

and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

2. The policy's limit of liability is $10,000.00, and from that amount $447.58 was deducted for payment previously made by the insurer under the medical expense coverage.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

I find, however, that application of a fundemental principal of due process provides a less involved solution. That principle is expressed in the various sayings to the effect every man is entitled to his day in court before he can be bound by the court's judgment.[3]

While this fundemental right has been made a part of our state and federal constitutions, it is much older than either.[4]

A correlative rule could be popularly stated to the effect that one is entitled to but *one* day in court. In legal language this is known as the doctrine of res judicata. It ". . . precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction."[5] Our problem is to determine whether the court below, in extending the doctrine of res judicata so as to conclude the insurer from litigating (or relitigating) the issues of liability and damage adjudicated in the prior action (in which the insurer was not a party and did not participate), denied the insurer its day in court.

3. "The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." Anderson Nat. Bank v. Luckett (1944), 321 U. S. 233, 246, 88 L. Ed. 692, 705, 64 S. Ct. 599, 606, 151 A. L. R. 824, 832.

"The guaranty of due process of law requires that every man shall have the protection of his day in court . . . ." City of Chicago v. Cohn (1927), 326 Ill. 372, 158 N. E. 118, 120.

4. "The idea of procedural due process is reflected in the statement that it is a rule as old as the law that no one shall be personally bound until he has had his day in court . . . ." 16 Am. Jur. 2d 942, Constitutional Law § 548.

5. Mayhew v. Deister (Ind. App. 1969), 244 N. E. 2d 448, 453, 16 Ind. Dec. 516, 524.

As we said in *Bastin* v. *Myers* (1924), 82 Ind. App. 325, 343, 144 N. E. 425, 431:

"It is elementary that a judgment is conclusive and binding only against the parties thereto and their privies. As to strangers, it is evidence only of its entry, and not of any fact on which it was based."

We there cited as authority *Grigsby* v. *Akin* (1891), 128 Ind. 591, 594, 28 N. E. 180, 181, in which the Supreme Court had said: "It is a fundamental principle that a party can not be affected by a proceeding in court to which he was not a party, and in which he had no opportunity of being heard."

In *Maple* v. *Beach* (1873), 43 Ind. 51, 58, the Supreme Court said:

"A judgment is always evidence of the fact that such a judgment has been given, and of the legal consequences which result from that fact. 1 Starkie Ev. 317; 1 Greenl. Ev., sec. 538. This is true whether the person against whom it is offered as evidence was a party to the action in which it was rendered or not. But when the judgment is offered not merely as evidence of its own existence, but as proof of some fact or facts upon the supposed existence of which the judgment was founded, the rule is very different. When the judgment is offered for this last named purpose, the general rule is, that it is not binding upon any one except the parties thereto, those who might legally have become parties, and those in privity with them. 1 Stark Ev. 323; and 1 Greenl. Ev., sec. 252."

In *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448, 453, 16 Ind. Dec. 516, 524 (also a summary judgment case) Judge Sharp succinctly, but more comprehensively, stated the applicable rules:

"The classical doctrine of res judicata precludes parties of their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a later lawsuit on a different cause of action. Obviously this is not such a case since the defendants-appellants here were not parties to the Federal Court quiet title

suit. Further, our Supreme Court has stated the general requirement that the plea of res judicata is available only when there is privity and mutuality of estoppel. Under this requirement only parties or their privies to the former judgment could take advantage of or be bound by the former judgment. In this sense a party is one who is directly interested in the subject matter and *had a right to make defense or to control the proceedings* and to appeal from the judgment. *Tobin* v. *McClellan* (1947), 225 Ind. 335, 73 N. E. 2d 679. By this definition the defendants-appellees here were not parties to the Federal Court quiet title suit." (My emphasis.)

The Supreme Court of Illinois has stated it thus:

"The doctrine of res judicata is that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter, as between the parties or their privies, in any subsequent suit, in the same or any other court at law or in chancery. But the doctrine has no application against or in favor of anyone not a party or privy. The doctrine is bottomed on the ground that the party to be affected, or someone with whom he is in privity, has litigated or has had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. Newberry Library v. Board of Education, 387 Ill. 85, 55 N. E. 2d 147; Postal Telegraph Cable Co. v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. Ed. 1215. The opportunity to be heard is an essential requisite of due process of law in judicial proceedings, and courts cannot without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party to such prior judgment. Newberry Library v. Board of Education, 387 Ill. 85, 55 N. E. 2d 147; Postal Telegraph Cable Co. v. City of Newport, 247 U. S. 464, 38 S. Ct. 566, 62 L. Ed. 1215. It is a fundamental principle of law that controls the application of res judicata that one is not bound by a prior judgment if he was not a party to such action or does not stand in the relation of privy to one who was a party. Ohio National Life Ins. Co. v. Board of Education, 387 Ill. 159, 55 N. E. 2d 163." Hedlund v. Miner (1946), 395 Ill. 217, 69 N. E. 2d 862, 868.

The company can not be bound as a "privy" by the judgment against the uninsured motorist because, "[a] privy is one who *after rendition of the judgment* has acquired an in-

terest in the subject matter affected by the judgment".[6] That definition readily eliminates the company from the category of "privy" for the simple reason that if it ever had any interest in any subject matter affected by the judgment, such interest was acquired prior to the rendition of the judgment. *Tobin* v. *McClellan*, supra (225 Ind. at 346).

But the company cannot escape classification as a "party" merely because it was not formally named as either plaintiff or defendant. As stated in *Mayhew*, supra: "In this sense a party is one who is directly interested in the subject matter and had a right to make defense or to control the proceedings, and to appeal from the judgment." (244 N. E. 2d at 453.) That definition comes from *Tobin* v. *McClellan* (1947), 255 Ind. 335, 344, 73 N. E. 2d 679, 683, which quotes a part of a sentence from 1 Greenleaf, EVIDENCE (15th ed.) 661, § 523. A more extended quotation from the section of Greenleaf states:

> "§ 523. Parties. Under the term *parties*, in the connection, the law includes all who are directly interested in the subject-matter, and had a right to make defence, or to control the proceedings, and to appeal from the judgment. This right involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as *strangers* to the cause."

The Supreme Court of Indiana said this:

> "The general rule is undoubtedly that the prior judgment of a court of concurrent jurisdiction is conclusive only between those who were parties, or their privies. It is equally true, however, that courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation, and who conduct and control the action or defence, as real parties, and hold them concluded by any judgment which may have been rendered. Palmer v. Hayes, 112 Ind. 289, and cases cited; Burns v. Gavin, 118 Ind. 320; Peterson v. Lathrop, 34 Pa. St. 223.

---

6. *Mayhew* v. *Deister*, *supra*, 244 N. E. 2d at 454, emphasis added.

"Another exception to the general rule occurs, when it is shown that a third person has such a relation to a title, or subject-matter previously adjudicated, that it was his duty, although not a party on the record, to have defended the action, upon the requisite notice thereof being given, and that he had due notice and proper opportunity to make defence. Robbins v. Chicago City, 4 Wall. 657; Calderwood v. Brooks, 28 Cal. 151; Drennan v. Bunn, 124 Ill. 175.

"Where one is bound to protect another from a liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation, and opportunity to control and manage it. This is the doctrine deduced from the whole current of authorities on this subject. . . ." Strong v. Phoenix Ins. Co., 62 Mo. 289 (21 Am. Rep. 417).

"Before a third person not a party, or privy to an action, can be concluded by the judgment, it must appear that his title or interest was involved in the issue tried, and he must have actually conducted or controlled the action or defence, *or he must have occupied such a relation to the controversy that it became his duty and that he had the right,* upon receiving notice, *to assume control of the litigation. One must either control the proceedings, or he must have had the right to do so, before he can be held concluded by the judgment.* A third person who neither appears, nor has the right to appear and produce evidence or cross-examine witnesses, or take an appeal, in case an appeal lies, regardless of the wishes of the party on the record, can not be regarded as a party and bound by the judgment." (Italics added) Wilson v. Brookshire (1890), 126 Ind. 497, 503, 25 N. E. 131, —.

This principle has been applied to an automobile liability insurer which has notice of a tort action *against* its insured by a third party allegedly injured by the insured's operation of the insured vehicle. *Hoosier Casualty Company* v. *Miers* (1940), 217 Ind. 400, 403, 404, 27 N. E. 2d 342, 344; *Motorists Mutual Ins. Co.* v. *Johnson* (1966), 139 Ind. App. 622, 630, 218 N. E. 2d 712, 716, 8 Ind. Dec. 687, 696.

The *Motorists Mutual* opinion quotes from the *Hoosier Casualty* opinion as follows:

" 'Ordinarily a liability insurer is bound by the result of the litigation against the insured, provided it had notice of

such litigation and an opportunity to control its proceedings. . . .' 8 Applemen Ins. L. & P., § 4860, p. 289 (1962)."

The liability insurer's right to control the defense of such proceedings arises out of the fact they are *against* the liability company's insured who can, therefore, turn the defense over to his company. The policy contract between the company and the insured requires the company to defend and the insured to permit and assist it in so doing. For instance, the policy which is in the record in the case at bar, provides a liability coverage which reads in basic and pertinent part as follows:

> "Indiana Insurance Company (A stock insurance company, herein called the company) Agrees with the insured . . . Part I—Liability . . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages of: A. . . . 'bodily injury' . . . B. . . . 'property damage'; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and *the company shall defend any suit* alleging such bodily injury or property damage and seeking damages . .; but the company may make such investigation and settlement of any claim or suit as it deems expedient. [Emphasis added.]

> \* \* \*

CONDITIONS

\* \* \*

> "5. Assistance and Cooperation of the Insured—Parts I and III. The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not except as his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

But the case at bar does not concern or involve the liability coverage of the policy. So far as the coverage in this case is concerned, the company is not a liability carrier. Uninsured motorist coverage is not liability coverage.[7] And the prior judgment here involved was not rendered in an action *against* the insured.

One who is insured under the liability coverage can, and does, contract to turn over to his or her liability insurer the "control" (i.e., the "defense") of any action *against* him or her for damages by a plaintiff who claims to have been injured by the insured's ownership, maintenance or use of the insured automobile and the company agrees that it *"shall* defend any [such] suit." If the insured follows through by timely tender-

---

7. "The undertaking of the insurer more closely resembles the undertaking contained in other provisions of the standard policy to pay to the insured medical expenses suffered by him as a result of injury by automobile, although the undertaking now in question is limited to payment of damages for bodily injuries occasioned by a limited category of tort feasors, namely uninsured operators against whom the insured is 'legally entitled to recover.' See 24 Insurance Counsel Journal 134, 136-137. Thus uninsured motorist insurance more closely resembles accident insurance restricted to a limited class of accident, than its does the type of insurance commonly regarded as indemnity insurance. See 44 CJS supra Insurance § 2, p. 474.' Kirouac v. Healey, supra (1962), NH, 181 A. 2d 634, 1. c. 636." State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig (Mo. App. 1963), 364 S. W. 2d 343, —, 95 A. L. R. 2d 1321, 1326.

"The type of insurance here involved is new and different. It defies efforts to categorize it or bring it into some pre-existing classification. In legal effect it appears to be a guarantee by the insurer to a motorist, who by reason of a future automobile accident might become the prospective creditor of the owner or operator of an uninsured automobile, that it, the insurer, as the guarantor will pay such damages as the insured might be entitled to recover. Such a contract in other times would have been considered foolhardy, but installment purchases, the automobile age, the vast number of automobile accidents, and the development of actuarial skill, have all contrived to create this product of our times. If we accept it as alleviating to some extent the injuries inflicted by uninsured motorists, then the insurer is entitled to have its liability legally determined. With respect to the insurance policy here involved, intervention is the only practicable remedy." *Wert* v. *Burke* (Ill. App. 1964), 197 N. E. 2d 717, 719.

"As pointed out in Kirouac v. Healey, 104 N. E. 157, 160, 181 A. 2d 634, uninsured motorists' insurance is not liability insurance in any sense, but resembles limited accident insurance. It does not undertake to protect the insured against liability he may incur to others, as does liability insurance but rather insures him against losses occasioned to him by a limited group of tort feasors. Kirouac v. Healey, supra, 160, 181 A. 2d." *Hein* v. *Nationwide Mut. Ins. Co.* (1965), 106 N. H. 378, 213 A. 2d 197, 199.

ing to the company the defense[8] of any such suit which may thereafter be filed against the insured, the insured can and does put the liability company into the position of a party (the defendant) to that lawsuit. The liability company is thus enabled to have its day in court. If the judgment then goes *against* the defendant, such judgment can thereafter be used *against* the liability company because it had (or could have had) its day in court and lost. Every requirement of the *Tobin* v. *McClellan,* supra, definition of parties quoted from *Greenleaf,* supra, is fulfilled. But such is patently not so of the uninsured motorist coverage.

An insured who has a claim against the company carrying his uninsured motorist coverage is in no position to tender to his carrier the defense of his adversary, the uninsured motorist. Consequently a judgment against his adversary, the uninsured motorist, can not be used *against* his insurance company because his insurance company has not had its day in court (or the right to have it) to defend against the rendition of that judgment.

Whatever it was that the insured, in the case at bar, offered to her company when the company "was requested to join in said suit", it was not a tender of the defense of the uninsured motorist. It could not have been. It was not hers to tender.

In the case at bar the company did not have, and could not have had, its day in court to defend against the judgment which was used as conclusive evidence against it, but it is said that the company could have intervened and could thus have had its day in court. *State ex rel. State Farm Mutual Automobile Ins. Co.* v. *Craig* (Mo. App. 1963), 364 S. W. 2d 343, 95 A. L. R. 2d 1321, is the widely cited authority for the right to intervene. Strangely enough the insurance company in that case was already a party to Count II and sought to intervene in Count I (to which the uninsured motorist was the only defendant) after its motion to be dismissed from Count II had

---

8. See *Motorists' Mutual Ins. Co.* v. *Johnson* (1966), 139 Ind. App. 622, 631, 218 N. E. 2d 712, 716, 8 Ind. Dec. 687, 693.

been overruled. Permission to intervene was mandated under a Missouri Supreme Court Rule 52.11 patterned after the former federal rule 24(a)(2) which permitted intervention by one who "might be" bound by the judgment. This rule is so much more liberal than our Burns' Ind. Stat. Ann. (1967 Repl.) § 2-222 (in effect when this case was litigated) and the posture of that case is so much different[9] from the case at bar that it would have been of doubtful authority had the insurer herein petitioned to intervene when it was notified of its insured's suit against the uninsured motorist.

The following excerpts from *Allstate Insurance Company* v. *Hunt* (Tex. Civ. App. 1970), 450 S. W. 2d 668, 671, 672, decided seven years after the Missouri case, seems to me to express a much better informed, more mature, better reasoned, and more generally applicable view of the insurance company's intervention in its insured's suit against the uninsured motorist:

> ". . . [A] number of cases have denied the insurance company the right to participate in the defense of an uninsured motorist in a suit brought by its insured. In Holt v. Bell, 392 P. 2d 361 (1964), the Oklahoma Supreme Court held that the auto liability insurer could not be joined as a defendant in an insured's suit against an uninsured motor-

9. The Missouri Court of Appeals was very careful to give its decision an entirely narrow effect as precedent. A limitation which the courts of many other states have ignored in their haste to find an easy alternative to what they apparently view as a harsh result where fundamental concepts of due process are applied. The Missouri court said:

"For the reason assigned, we believe that, *under the facts peculiar to this case,* the relator should be permitted to intervene as a matter of right. [Italics by the Missouri court.]
* * *

"The subject of the 'uninsured motorist' coverage is a new one. . . . The courts have not yet had time or opportunity to work out the mechanics of procedure applicable to this innovation. . . . What we have said and held is of course applicable only to the case; and in consideration of circumstances which involve a situation where the insurer has been dragged into the lawsuit by its heels and the trial court has refused to let it out; and that it is an unwilling party to a suit in which (unless by some special order of arrangement) there will be but one final judgment. . . . As to the various and sundry questions which may or might arise concerning the procedure to be involved in this character of insurance, we express no opinion and intend no holding except as applied to the special situation before us." 364 S. W. 2d at 349, 95 A. L. R. 2d 1329.

ist. The court stated that it could not countenance a situation where the parties are placed in a position where the interest of the insurer is to defeat the claim of its own insured. In MFA Mut. Ins. Co. v. Bradshaw, 431 S. W. 2d 252 (1968), the Supreme Court of Arkansas stated that it was doubtful that the insurer has the right to defend the uninsured motorist. In Kirouac v. Healey, 104 N. E. 157, 181 A. 2d 634 (1964), the Supreme Court of New Hampshire held that the insurance company had no standing in its insured's action against an uninsured motorist. In Hernandez v. State Farm Mut. Auto Ins. Co., 192 So. 2d 679 (La. App. 1967), the Court held that the insurer had no right to provide a defense for the uninsured motorist in the insured's action against such uninsured motorist.

"Serious ethical problems arise when an insurance company seeks to participate in the defense of an uninsured motorist. There may be (1) a potential or actual conflict of interest between the insurance company and its own insured and (2) there may be a potential or actual conflict of interest between the insurance company and the uninsured motorist. As the representative of the uninsured motorist the company stands in a fiduciary relationship to him. As the insurer of one suing the uninsured motorist it has, contractually, not only the right but also the duty to represent its insured in defense of any claim that may be asserted against him as a result of the collision in question, and thus stands in a fiduciary relationship to him. Thus to permit the insurance company to defend the uninsured motorist is to permit it to assume a fiduciary relationship to two parties having conflicting interests in the subject matter of the trust.

\* \* \*

"Interestingly, in any situation where the insurance company is permitted to undertake a dual representation the most favorable result for the company is for both its insured and the uninsured motorist to be found contributorily negligent. Such a determination would preclude the insurance company's liability. To contend for this most favorable result, however, makes for a conflict of interest between the insurance company and both the insured and the uninsured motorist.

\* \* \*

"We are of the opinion, however, that the conflict of interest that is in every case potentially present compels a determination that the insurance company must refrain from rep-

resenting the uninsured motorist or from intervening in an uninsured motorist case such as the one here presented. Only such determination will eliminate the possibility of the conflict of interest arising."

Among the confusions which may have led many courts to hold that the "right" to intervene was sufficient to make the insurer a party to the insured's judgment against the uninsured motorist for purpose of *res judicata* may have been their apparent failure to realize that in some states the uninsured motorist coverage statutes give the insurer virtually the same right to defend the uninsured motorist that the liability policy gives in defense of suits against the insured.[10]

Another reason given for holding the insurer bound by the judgment against the uninsured motorist is the declared in-

---

10. An example of such a statute is Code of Georgia (1960 Rev.-1969 Supp.) § 56-4071(d) which reads:

"In cases where the owner or operator of any vehicle causing injury or damages be known, and either or both be named as defendants in any action for such injury or damages, a copy of such action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though such insurance company were actually named as a party defendant. If either the owner or operator of any vehicle causing injury or damages be unknown, an action may be instituted against the unknown defendant as 'John Doe,' and a copy of such action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though such insurance company were actually named as a party defendant, *and the insurance company shall have the right to file pleadings and take other action allowable by law in the name of John Doe or itself.* In any case herein where service upon an insurance company is prescribed, the clerk of the court in which the action is brought shall have same accomplished by issuing a duplicate original copy for the sheriff or marshal to place his return of service in the same form and manner as prescribed by law for a party defendant. The return of service upon the insurance company shall in no case appear upon the original pleadings in such case. *In the case of a known owner or operator of such vehicle, either or both of whom is named as a defendant in such action, the insurance company issuing the policy shall have the right to file pleadings, and take other action allowable by law in the name of either the known owner or operator or both or itself.*

"A motor vehicle shall not be deemed to be an uninsured motor vehicle within the meaning of this section when the owner or operator of such motor vehicle has deposited security, pursuant to the provisions of Section 9 of an Act providing for the giving of security by owners and operators of motor vehicles [Chapter 92A-6], in the amount of $10,000 where only one person was injured or killed, $20,000 where more than one, or $5000 for property damage" (Emphasis added)

validity of the arbitration clause. (While I have not been thoroughly convinced of this invalidity I accept it.) If there is a causal relationship between those two holdings it completely escapes me. It would seem to me that if parties have agreed to arbitrate a dispute and the agreement is void, the parties would then have a right to litigate that dispute in the courts. Why the invalidity of their agreement to arbitrate should deny one of the parties her day in court seems to defy all reason. Particularly so since the very reason for declaring the arbitration agreement void is that it prevents the other party from asserting her rights in court.

A partial explanation for this curious *non sequitur* is that the "consent to be bound" clause of the policy at bar has been confused with the older "permission to sue" clause.[11]

It is also suggested that because an automobile insurance policy is a complex contract, unilaterally prepared and seldom understood by the insured, whose bargaining position is inferior (both before and after an accident), the insurer cannot rest on a denial of liability but must take affirmative action to adjudicate every claim made against it under the uninsured

---

11. The permission to sue clause in the pre-1963 standard uninsured motorist coverage reads:

### Exclusions

"This endorsement does not apply:
(a)   to bodily injury to an insured or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor;"

See Widiss UNINSURED MOTORIST COVERAGE, § 7.4, p. 257; App. A., p. 301.

The majority opinion quotes Widiss, § 7.5, p. 258, which section refers only to the above quoted clause and not to the consent-to-be-bound clause. The latter clause (in the policy at bar) reads:

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

motorist clause, even if that means intervening in somebody else's lawsuit to do so. The language of one court, that "the insurance company may not ignore its insured and then seek refuge in fine print of its policy"[12] has in it the sound of demagoguery. Especially is that so when the "fine print" is the consent-to-be-bound clause which is merely a statement of the ancient right of every person to his day in court. Furthermore, insurance contracts are not the only complex, unilaterally prepared contracts of modern society. Nearly all consumer contracts fall into that category and the idea that they can be disregarded and disputes under them decided on what the judges think the contract should have been is quite inviting to one who likes to see the little man's usual disadvantage counterbalanced. But since basic constitutional rights when not accorded to all persons, big or little, rich or poor, corporate or human, good or bad, are possessed by no one, we cannot deny insurance companies their right to their day in court without imperiling our own.

Until the General Assembly, by statute, or the Indiana Supreme Court by rule, specifies (if that be possible) the procedure by which an intervening insurer can thus have his day in court without violating its contractual duties to its own insured and, at the same time, infringing on the constitutional rights of the uninsured motorist to also have his day in court, it is illusory to hold that the insurer is bound by the judgment against the uninsured because the insurer could have intervened.

The judgment should be reversed and the cause remanded for further proceedings in which no conclusive effect is given to the judgment against the uninsured motorist.

NOTE.—Reported in 265 N. E. 2d 419.

---

12. *Allstate Ins. Co.* v. *Pietrosh* (Nevada), 454 P. 2d 106, 108, quoted by majority.